SOUTHWESTERN SLATE COMPANY, Appellant, vs. STEPHENS, Respondent.

*March 11—June 3, 1909.*

*Appeal and error: Findings, when disturbed: Foreign corporations:
Wisconsin contracts: Offer to sell stock: Acceptance: Completed
contract: Rights of subscribers: Void contracts: "Personal lia-
bility" of corporation: Commerce: Interstate commerce: Con-
tracting and transacting business in Wisconsin: Amendment of
statutes.*

1. Where a foreign corporation had not complied with the require-
ments of sec. 1770*b*, Stats. (1898), as amended by ch. 506, Laws
of 1905, findings of the trial court that its contract was made
in Wisconsin and affected its personal liability, supported by
sufficient evidence, must be affirmed, regardless of whether the
corporation was or was not transacting business in this state
within the meaning of subd. 2, sec. 1, of the amendment of 1905.

2. Contracts inhibited by subd. 10, sec. 1, ch. 506, Laws of 1905, are
not limited to those made by a foreign corporation doing busi-
ness in this state within the meaning of subd. 2 of that section.

3. An offer by a foreign corporation to sell its stock and sell it in
Wisconsin, when accepted by a subscriber residing in Wisconsin,
completes a contract, and such contract is made in Wisconsin,
although it might be afterwards avoided by failure or refusal
to perform conditions, which as a matter of fact were per-
formed.

4. An organized corporation, as such, has the right to offer for sale
its unsubscribed capital stock and to make a valid sale of the
same.

5. Where an organized corporation offers to sell its capital stock
at a stipulated figure, an acceptance of the offer makes a bind-
ing contract. An acceptance of the acceptance is unnecessary.

6. Subscribers to unsold capital stock of a corporation become mem-
bers thereof, and the corporation becomes bound to deliver the
muniments of title showing the interest the subscribers have
acquired in the corporation, which may be compelled by ap-
propriate proceedings in courts.

7. A subscriber for unsold capital stock of a corporation, by virtue
of his contract of purchase, becomes entitled to enforce the or-
dinary rights of stockholders against the corporation.

8. A single contract falls within the ban of the statutes, when made by a foreign corporation which has failed to comply with the requirements of sec. 1770*b*, Stats. (1898), as amended by ch. 506, Laws of 1905.

9. A contract by a foreign corporation for the sale of its unsold capital stock to a subscriber affects the personal liability of the corporation within the calls of sec. 1770*b*, Stats. (1898), as amended by ch. 506, Laws of 1905, and is void.

10. A sale of shares of a corporation is really the sale of a fractional interest in the corporation, and where made by a foreign corporation to a resident of Wisconsin involves no question of interstate commerce.

11. Ch. 506, Laws of 1905, does not amend the law as it then existed so as to relieve all foreign corporations that do not have a portion of their capital stock invested in Wisconsin from complying with the statutes, if such corporations actually transact business within the state, or make contracts therein upon which they assume personal liability.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

This action is brought to recover a balance alleged to be due on an unpaid subscription for capital stock of the plaintiff. The plaintiff was incorporated June 16, 1905, with an authorized capital stock of $500,000. Its principal place of business was Pierre, South Dakota, and outside of South Dakota its principal place of business was the city of Chicago. Its articles of incorporation empowered it to engage in a great many different kinds of business, among them the operation of mines and quarries and dealing in the capital stock and bonds of the plaintiff or any other corporation. The business in which the company was engaged, in so far as it was engaged in any business, was developing slate quarries in Arkansas. It never complied with the provisions of sec. 1770*b*, Stats. (1898). Prior to November, 1905, the company had issued $232,000 of paid-up stock. At a meeting of the board of directors held in Chicago in August, 1905, it was decided to sell a portion of the authorized and unissued stock of the company in order to provide the necessary work-

ing capital, and a resolution was passed authorizing the secretary to sell such stock at not less than par, and also authorizing him to offer a commission for the sale of the same not. exceeding fifteen per cent. of the amount realized upon such sale.   N. B. Van Slyke of Madison, Wisconsin, was president. of the company, and J. M. Van Slyke was its secretary.   An arrangement was entered into with one Frank M. Wootton, a. broker of Madison, to sell the capital stock of the corporation to the amount of $100,000.   There is some dispute in the testimony as to whether this contract was made on behalf of the company by J. M. Van Slyke or by N. B. Van Slyke. The court found that the contract was made with the latter. Mr. Wootton commenced soliciting subscriptions in December, 1905, and secured the necessary subscriptions prior to. March 6, 1906.   The subscribers were all residents of the state of Wisconsin.   When the necessary amount of capital stock was subscribed the subscription paper was taken by Mr. Wootton to N. B. Van Slyke and the same was checked over by him.   The defendant subscribed to the capital stock of the plaintiff to the amount of $5,000 and paid the first twenty per cent. assessment.   Thereafter he refused to pay any other or further assessments, and this suit is brought to recover the unpaid balance of his subscription, amounting to $4,000. The court found that the plaintiff made a contract with Wootton for the sale of its stock on commission; that Wootton secured the subscription of the defendant, a resident of Madison, for $5,000 of its capital stock; that such subscription was made at Madison, Wisconsin, and the same was accepted there by N. B. Van Slyke as president of the corporation, pursuant to. the authority given him by the board of directors.   As a conclusion of law the court found that the subscription contract was void under the provisions of sec. 1770b, Stats. (1898). The trial court in his opinion held that the power to sell carried with it the authority to accept subscriptions, and that therefore the entire contract pertaining to the sale of the stock

was made in Wisconsin; that such contract imposed mutual obligations upon the contracting parties which affected the personal liability of the plaintiff corporation; and that the plaintiff was transacting business within the state in violation of the statute referred to. From a judgment dismissing the complaint in the action this appeal is taken.

For the appellant there was a brief by *Richmond, Jackman & Swansen,* attorneys, and *Josiah Cratty,* of counsel, and oral argument by *S. T. Swansen.* They contended, *inter alia,* that the court erred in finding that the defendant's subscription was accepted in Wisconsin. Delivery of the subscription and its acceptance were necessary. *Badger P. Co. v. Rose,* 95 Wis. 145; *Gilman v. Gross,* 97 Wis. 224; *Franey v. Warner,* 96 Wis. 222; 1 Cook, Corp. (6th ed.) §§ 72, 82–88; *White v. Crosby* (Tex.) 51 S. W. 350; *Northern C. M. R. Co. v. Eslow.* 40 Mich. 222, 223; 1 Machen, Modern Law of Corp. §§ 186, 221; *Wright v. Agelasto,* 104 Va. 159, 51 S. E. 191; *Porter v. Raymond,* 53 N. H. 519; *Johnson v. Schar,* 9 S. Dak. 536, 70 N. W. 838, 839; *Bobzin v. Gould B. V. Co.* (Iowa) 118 N. W. 40; *Cravens v. Eagle C. M. Co.* 120 Ind. 600, 21 N. E. 981, 983; *Co-operative T. Co. v. Katus,* 140 Mich. 367, 103 N. W. 814; *Chase v. S. & C. R. Co.* 38 Ill. 215; 7 Am. & Eng. Ency. of Law (2d ed.) 129. The conditional subscription being completed in Chicago makes it an Illinois contract. A contract is made where it first takes effect. 9 Cyc. 670; *Holder v. Aultman,* 169 U. S. 81, 45 L. Ed. 669, 672; *Milliken v. Pratt,* 125 Mass. 374; 2 Parsons, Cont. 712; *Perry v. Mount Hope I. Co.* 15 R. I. 380, 5 Atl. 632; *Shuenfeldt v. Junkermann,* 20 Fed. 357, 359; *Presbyterian M. Fund v. Thomas,* 126 Wis. 281, 282; *Emerson Co. v. Proctor,* 97 Me. 360, 54 Atl. 849. The court erred in its conclusions of law holding the subscription contract void under sec. 1770*b,* Stats. (1898), and amendments thereto, and in dismissing the complaint. Ch. 506, Laws of 1905, being a complete revision of the laws relating to foreign corporations, operates to repeal

all former statutes on the subject. *State v. Campbell,* 44 Wis. 529, 534; *Dane Co. v. Reindahl,* 104 Wis. 302. The plaintiff before doing the acts shown in the testimony was not required to obtain a license authorizing it to do business in this state. *Chicago T. & T. Co. v. Bashford,* 120 Wis. 281, 284; *Atlas E. Works v. Parkinson,* 161 Fed. 223; *Catlin & P. Co. v. Schuppert,* 130 Wis. 642; *International T. Co. v. Peterson,* 133 Wis. 302, 307. A subscription to capital stock is merely an offer by the subscriber to the company to take the amount of stock designated in the subscription. The subscriber is the offerer. 1 Machen, Modern Law of Corp. §§ 182, 619; *Da Ponte v. Breton,* 121 La. 454, 46 South. 571; 1 Cook, 'Corp. (6th ed.) § 61; *Wells v. G. B. & M. C. Co.* 90 Wis. 442, 453. Transacting or doing business within the meaning of sec. 1770*b,* Stats. (1898), means doing the business for which the corporation is organized. *Penn. C. Co. v. McKeever,* 183 N. Y. 98; *Comm. v. Standard Oil Co.* 101 Pa. St. 119, 148; *People ex rel. Parker Mills v. Comm'rs,* 23 N. Y. 242; *Cooper Mfg. Co. v. Ferguson,* 113 U. S. 727, 28 L. Ed. 1137; *Green v. C., B. & Q. R. Co.* 205 U. S. 530; *Boardman v. S. S. McClure Co.* 123 Fed. 614; *Beard v. Am. & U. & A. P. Co.* 71 Ala. 60. Sec. 1770*b* and like statutes are for the protection of third persons dealing with foreign corporations and are not intended as a regulation between the corporation and its own members or those negotiating to become such. *First Nat. Bank v. Leeper,* 121 Mo. App. 688, 97 S. W. 636; *Union T. Co. v. Sickels,* 126 App. Div. 920, 109 N. Y. Supp. 262; *Mandel v. Swan L. & C. Co.* 154 Ill. 177, 40 N. E. 462; *People ex rel. Stead v. C., I. & L. R. Co.* 223 Ill. 581, 79 N. E. 144, 146; *Payson v. Withers,* Fed. Cas. No. 10,864; *Honeyman v. Colorado F. & I. Co.* 123 Fed. 96, 97; *Galena M. & S. Co. v. Frazier,* 20 Pa. Super. Ct. 394, 397; *Pavilion Co. v. Hamilton,* 15 Pa. Super. Ct. 389, 391; *Brown v. Guarantee S. L. & I. Co.* 46 Tex. Civ. App. 295, 102 S. W. 138; *Davis & R. Bldg. & Mfg. Co. v.*

*Dix,* 64 Fed. 406; Beale, Foreign Corp. §§ 204–209.  The transaction constituted an act of commercial intercourse, and hence, as between the parties residing in different states, was an act of interstate commerce.  *Butler Bros. S. Co. v. U. S. R. Co.* 156 Fed. 1, 17; *Pensacola Tel. Co. v. W. U. Tel. Co.* 96 U. S. 1, 8; *Gibbons v. Ogden,* 9 Wheat. 1, 6 L. Ed. 23, 68; *Loverin & B. Co. v. Travis,* 135 Wis. 322, 115 N. W. 829, 831; *Passenger Cases,* 7 How. 283; 7 Cyc. 413, 414.

For the respondent there was a brief by *Olin & Butler,* and oral argument by *J. M. Olin.*  They contended, *inter alia,* that there was no error in finding that defendant's subscription was accepted in Wisconsin.  (a) The offer to sell treasury stock of the plaintiff was made by the company to the prospective buyers.  *Greer v. Chartiers R. Co.* 96 Pa. St. 391, 42 Am. Rep. 548; *McDowell v. Lindsay,* 213 Pa. St. 591, 63 Atl. 730, 731; *Bates v. G. W. Tel. Co.* 134 Ill. 536, 25 N. E. 521; *European & N. A. R. Co. v. McLeod,* 16 N. B. 3.  (b) The contract was accepted in Wisconsin.  *Badger P. Co. v. Rose,* 95 Wis. 145, 152; *Eliason v. Henshaw,* 4 Wheat. 225; *M'Culloch v. Eagle Ins. Co.* 18 Mass. 278; 1 Morawetz, Corp. (2d ed.) § 48; 1 Cook, Corp. (6th ed.) § 72.  (c) The condition that Mr. Higham should be employed is collateral and in the nature of a condition subsequent.  *American Bldg. & L. Asso. v. Rainbolt,* 48 Neb. 434, 68 N. W. 493, 497, 498; 1 Cook, Corp. (6th ed.) § 78; *Bobzin v. Gould B. V. Co.* (Iowa) 118 N. W. 40; *Paducah & M. R. Co. v. Parks* (Tenn.) 8 S. W. 842, 844; *Morrow v. I. & S. Co.* 87 Tenn. 262, 10 S. W. 495, 500; *Mill Dam Foundery v. Hovey,* 21 Pick. 417, 437; *Pacific M. Co. v. Inman,* 46 Oreg. 352, 80 Pac. 424, 427; *Johnson v. Georgia M. & G. R. Co.* 81 Ga. 725, 8 S. E. 531; *Chamberlain v. Painesville & H. R. Co.* 15 Ohio St. 225; *Cravens v. Eagle C. M. Co,* 120 Ind. 6, 21 N. E. 981, 983; *Hoffman v. King,* 70 Wis. 372, 382; *Keller v. Johnson,* 11 Ind. 337, 71 Am. Dec. 355.  No question of interstate commerce is involved in the case.  *Cat-*

*lin & P. Co. v. Schuppert,* 130 Wis. 642; *Elwell v. Adder M. Co.* 136 Wis. 82, 116 N. W. 882, 884; 17 Am. & Eng. Ency. of Law (2d ed.) 75; *Adams Exp. Co. v. Comm.* 124 Ky. 160, 92 S. W. 932, 933; *Standard Oil Co. v. State* (Tenn.) 100 S. W. 705, 711; *State v. Scott,* 98 Tenn. 254, 39 S. W. 1; *Kidd v. Pearson,* 128 U. S. 1; *Plumley v. Massachusetts,* 155 U. S. 461; *Diamond G. Co. v. U. S. G. Co.* 187 U. S. 611, 616; *International T. Co. v. Peterson,* 133 Wis. 302, 308; *Paul v. Virginia,* 8 Wall. 168; *Hopper v. California,* 155 U. S. 648; *New York L. Ins. Co. v. Cravens,* 178 U. S. 389; *Northern S. Co. v. U. S.* 193 U. S. 197, 333, 390, 391; *Ware v. Mobile Co.* 209 U. S. 405, 411–413; *New York ex rel. Hatch v. Riordan,* 204 U. S. 152, 161, 162; *People ex rel. Hatch v. Riordan,* 184 N. Y. 431, 453. The subscription contract, when accepted, made the defendant a stockholder, whether he had paid his subscription or not. *Franey v. Warner,* 96 Wis. 222, 231; *Rehbein v. Rahr,* 109 Wis. 136, 147; *Smith v. Burns B. & Mfg. Co.* 132 Wis. 177, 191; *McComb v. Barcelona A. Asso.* 134 N. Y. 598, 10 N. Y. Supp. 546, 549. Hence the corporation became bound to recognize defendant as a stockholder, and he could have compelled the corporation to thus recognize him and to award to him his share of the profits of the corporation. *Morey v. Fish Bros. W. Co.* 108 Wis. 520, 527; *Bailey v. Champlain M. & P. Co.* 77 Wis. 453, 459. He could have compelled the delivery of the certificate had it been refused. *Pacific Nat. Bank v. Eaton,* 141 U. S. 227, 233; *Wells v. Green Bay & M. C. Co.* 90 Wis. 442, 453; *Sclover v. Isle Harbor L. Co.* 91 Minn. 451, 98 N. W. 344, 346; 1 Cook, Corp. (6th ed.) sec. 61.

The following opinion was filed March 30, 1909:

. BARNES, J.    Sec. 1770*b,* Stats. (1898), as amended by ch. 506, Laws of 1905, was in force when the transactions out of which this action arose took place. The law forbade any

foreign corporation to "transact business or acquire, hold or dispose of property in this state until such corporation" complied with the law.   It also provided that "every contract made by or on behalf of any such foreign corporation affecting the personal liability thereof or relating to property within this state," before it complied with the law, should be wholly void and unenforceable by the corporation, but might be enforced against it.

The defendant seeks to defeat this action on two grounds: (1) That plaintiff was transacting business in this state in violation of law; and (2) that the contract upon which the suit is brought was made in Wisconsin and affected the personal liability of the defendant and was therefore void.   The trial court found as a matter of fact that the subscription contract was made in Wisconsin and that it affected the personal liability of the plaintiff.   If there is sufficient evidence in the record to sustain this finding the judgment must be affirmed. This result must follow regardless of whether the plaintiff was or was not transacting business in this state within the meaning of subd. 2, sec. 1, of the 1905 law.   We do not think the contracts inhibited by subd. 10 of sec. 1 of the act are limited to those made by a corporation doing business within the meaning of subd. 2.   Such a construction would render the quoted portion of subd. 10 superfluous.   The important question, therefore, becomes almost wholly one of fact and of legal inferences to be drawn therefrom.

In July of 1905 the secretary of the corporation was authorized to negotiate the sale of a portion of the unsubscribed stock of the company.   In December Mr. Wootton was employed as a broker, by either the president or the secretary of the corporation, to make the sale.   The court found that he was employed by the president.   He was assisted in securing subscribers by Mr. N. B. Van Slyke, the president of the company, and by Mr. Higham, it being understood that the latter should be employed as manager of the company if

$100,000 of the capital stock were disposed of so as to insure
the necessary working capital to finance the enterprise.    Mr..
Higham submitted his proposition to the board of directors
of the corporation at Chicago at a meeting held on January
29, 1906.    Mr. N. B. Van Slyke was authorized by the di-
rectors at such meeting to offer for sale, in accordance with a
subscription form agreed upon, and to sell, a sufficient amount
of the treasury stock of the company to insure the permanent
financing of it.    He was also authorized to enter into a con-
tract with Higham whenever the subscription was completed'
as provided in the form of subscription proposed.    Such sub-
scription form contained two conditions, by one of which it
was provided that not less than $100,000 should be sub-
scribed, and by the other that Mr. Higham was to undertake
the management of the business under a five-year contract.
As we read the subscription contract, it would not be bind-
ing on the subscribers unless both conditions were fulfilled.
N. B. Van Slyke, Higham, and Wootton all resided at Madi-
son.    All of the subscriptions were obtained in Wisconsin.
The requisite amount was subscribed about March 1st.    The·
subscriptions were apparently approved by Van Slyke.    The
stock issued was sent him and collections therefor were made·
through the bank in which he was interested.    After the req-
uisite subscriptions were obtained Mr. Van Slyke apparently
exercised his authority to hire Higham.    At a meeting of the·
directors held at Chicago March 16th a resolution was passed
approving of the contract made by Mr. Van Slyke with Mr.
Higham on March 6th.    It appears that the formal contract
with Higham was actually signed after the meeting of March·
16th.

We think this testimony clearly shows an offer made by
the plaintiff to sell its stock and to sell it in Wisconsin.    When
this offer was accepted by the subscribers and the requisite·
$100,000 was subscribed, a completed contract was made, and
it was made in this state.    It might be avoided by failure or·

refusal to employ Higham, but as a matter of fact he was employed at Madison and the contract became complete in every particular. *Greer v. Chartiers R. Co.* 96 Pa. St. 391; *European & N. A. R. Co. v. McLeod,* 16 New Brunswick, 3; 10 Cyc. 384. The plaintiff was an organized corporation and as such had the right to offer its unsubscribed stock for sale and to make a valid sale of the same. *Blunt v. Walker,* 11 Wis. 334, 350. Having offered to sell its stock at a stipulated figure, no good reason is apparent why an acceptance of the offer would not make a binding contract, subject to repudiation by the purchaser if the manager stipulated for was not employed. The case before us is unlike *Badger P. Co. v. Rose,* 95 Wis. 145, 70 N. W. 302; *Smith v. Burns B. & Mfg. Co.* 132 Wis. 177, 111 N. W. 1123; and *Francy v. Warner,* 96 Wis. 222, 71 N. W. 81, where the corporations were not organized when the subscriptions were made; nor like *Rehbein v. Rahr,* 109 Wis. 136, 85 N. W. 315, where the statute required the subscriptions to be a part of the articles of organization as filed; nor like *Gilman v. Gross,* 97 Wis. 224, 72 N. W. 885, where the transaction between the corporation and the prospective stockholder took the form of an offer to purchase by the latter and there was no acceptance by the former. We know of no case in this court holding that where a corporation offers for sale its unsold stock and such offer is accepted, there must be an acceptance of the acceptance to make a binding contract. Moreover, if acceptance of the subscriptions by the corporation were necessary to make a binding contract, we think the evidence is sufficient to sustain the finding of the trial court that such acceptance was made in Wisconsin by the duly authorized officer of the corporation, Mr. Van Slyke.

The contract having been made in Wisconsin, the subscribers became members of the corporation, and the plaintiff was bound to deliver the muniments of title showing the interest they had acquired in the corporation, and, in the event of its

failure so to do, delivery might be compelled by appropriate proceedings in the courts. Furthermore, by virtue of such contract of purchase the subscribers became entitled to enforce the ordinary rights of stockholders against the corporation. 1 Cook, Corp. § 192, and cases cited. A single contract falls within the ban of the statute. *Allen v. Milwaukee,* 128 Wis. 678, 106 N. W. 1099. It follows, therefore, that the contract was not only made within the state, but that it affected the personal liability of the plaintiff and was void under our statute. What was really sold was a fractional interest in the corporation, and we do not think the transaction involved any question of interstate commerce. *International T. Co. v. Peterson,* 133 Wis. 302, 113 N. W. 730. Neither do we think that the act of 1905 was intended to amend the law as it existed so as to relieve all foreign corporations that did not have a portion of their capital invested in Wisconsin from complying with the act if such corporations actually transacted business within the state or made contracts therein upon which they assumed a personal liability.

*By the Court.*—Judgment affirmed.

WINSLOW, C. J., took no part.

A motion for a rehearing was denied June 3, 1909.