LIVINGSTON, Appellant, vs. LINKER REALTY COMPANY, Respondent.

*May 1—October 14, 1930.*

For the appellant there were briefs by *R. V. Ahlstrom* and *Q. H. Hale,* both of La Crosse, attorneys, and *Harold M. Wilkie* of Madison of counsel, and oral argument by *Mr. Hale.*

For the respondent there was a brief by *Higbee & Higbee* and *Otto M. Schlabach,* all of La Crosse, and oral argument by *E. C. Higbee.*

The following opinion was filed June 23, 1930:

FAIRCHILD, J.   The questions presented under the statement of facts in this case are questions of law and they concern the contract between the Linker Realty Company and Bennethum as affected by ch. 136, Stats.

The negotiations between Bennethum and Livingston on the one hand, and the Linker Realty Company on the other, constitute a Wisconsin contract.   All the negotiations with Linker were carried on by Livingston, Bennethum sending blanks with instructions to him and he calling upon Linker, so that all the agreements were made in Wisconsin.   The final modification providing for the principal stockholders of the Linker Realty Company becoming co-makers of the note was secured by Livingston.  Livingston, working with Bennethum, submitted the Bennethum propositions to the Linker Realty Company and negotiated their acceptances and secured signatures to the so-called broker's agreement,

and this contract between the Linker Realty Company and Bennethum determines the rights of the parties in this case. *Southwestern Slate Co. v. Stephens,* 139 Wis. 616, 120 N. W. 408.

The contract in form, terms, and effect characterizes Bennethum as a real-estate broker. It engages him to render such services as are usually rendered by a licensed real-estate broker in the matter of making loans for clients for a commission. The Linker Realty Company did not know the commission for procuring a loan was to go to the Massachusetts Mutual Life Insurance Company until long after the contract to pay two per cent. of the amount borrowed was signed, and Livingston, who assisted Bennethum, believed the two per cent. "was the sole and separate property of Bennethum until after the claim had been assigned" to him. The impression made by the course of dealing, including, of course, the formal printed blanks and the contract, was that Bennethum was a broker.

The question arises as to whether or not by the method pursued and the written contract used Bennethum has advertised or held himself out as a broker.

In *Hickey v. Sutton,* 191 Wis. 313, 210 N. W. 704, it was held that the fact that the plans contained the words "architects and builders" after the names of the plaintiffs is evidence of representation that one is an architect. *Payne v. Volkman,* 183 Wis. 412, 198 N. W. 438.

Sec. 136.01 (5), Stats. 1927, reads:

"On and after January 1, 1920, no person, firm or corporation shall . . . advertise or hold himself or itself out as or shall act temporarily or otherwise as a real-estate broker or real-estate salesman in this state, without first procuring a license." ·

There is no dispute as to the facts in this case. Bennethum, acting for the insurance company seeking opportunity for loans in western Wisconsin, wherein La Crosse

is situated, has no broker's license. Livingston, who assisted him, has no broker's license. The commission contract is, upon its face, a commission proposition such as might be used by any broker. The statute relating to real-estate brokers is very broad—sec. 136.01 (2): "Any person, firm or corporation, not excluded by subsection (3) of this section [sub. 3 does not affect the parties here], who, for another, and for commission money or other thing of value: . . . (c) negotiates, or offers or attempts to negotiate a loan, secured, or to be secured, by mortgage or other transfer of or incumbrance on real estate," is a broker. One entering into a contract in this state to procure a loan for another, to be secured by mortgage on real estate, for a commission, is holding himself out as a broker or salesman, and cannot recover the commission unless he has a real-estate broker's or real-estate salesman's license.

The words used in Bennethum's contract bear but one interpretation: that he will, for two per cent. on the amount asked for, procure a loan for the borrower to be secured by mortgage on real estate. For some reason there was no disclosure of the real purpose and plan for using the commission in making the loan. Although the application for the loan and contract for payment of commission were signed at the same time, the borrower was led to believe he was dealing with and through a broker to whom he was to pay his money and from whom he was to secure certain services.

A corporation may loan its own money without a broker's license, but when it holds or advertises itself or its agent as a broker and agrees to procure a loan for the payment of a two per cent. commission, whether this is done to make it easier to collect the service charge or for whatever reason, it places itself within the statute and its agent doing these things must have a broker's license. The Massachusetts Mutual Life Insurance Company must take the agent's con-

tract subject to any infirmities or defenses that would exist if it had done precisely what was done by the agent.

This being determined to be a Wisconsin contract and conceded that the plaintiff's claim is not supported by a real-estate broker's license, the case is disposed of, and we shall not consider the other questions raised.

*By the Court.*—The judgment appealed from is affirmed.

A motion for a rehearing was denied, with $25 costs, on October 14, 1930.