AMERICAN TIMBER HOLDING COMPANY, Respondent, vs. CHRISTENSEN, Appellant.

*October 14—November 10, 1931.*

26

For the appellant there was a brief by *Lines, Spooner & Quarles* of Milwaukee, and oral argument by *Charles B. Quarles*.

For the respondent there was a brief by *Nohl, Nohl, Petrie & Blume* of Milwaukee, and oral argument by *Henry M. Blume*.

NELSON, J.   The defendant contends that the transaction set forth in the statement of facts constituted a completed

contract of sale within the state of Wisconsin and that such contract was wholly void under the provisions of sec. 1770*b* of the Statutes then existing. Defendant further contends that even if such transaction does not show a completed contract within the state of Wisconsin the condition annexed to the receipt constituted a counter offer which was never accepted by the plaintiff and therefore no contract resulted. Two questions for determination therefore arise on this appeal.

(1) Does the evidence permit only of the inference that a completed sale of stock was effected within the state of Wisconsin?

(2) Does the evidence permit only of the inference that the defendant's counter offer was never accepted with the result that no contract resulted?

In this case the facts were practically undisputed and the inferences to be drawn therefrom were for the court.

The defendant earnestly contends that the undisputed evidence permits of no inference other than that the contract for the purchase of the preferred stock by the defendant took place and was completed within the state of Wisconsin; and, since the plaintiff was not licensed to do business within this state, the first note given for such stock was wholly void as were the subsequent renewals thereof founded upon the same consideration. The law is established that the sale of its stock by a foreign and unlicensed corporation constitutes transacting business within this state and that such a contract is one affecting the personal liability of such corporation. *Southwestern Slate Co. v. Stephens,* 139 Wis. 616, 120 N. W. 408. The question for determination is therefore a rather narrow one. If the plaintiff sold preferred stock to the defendant within this state it did business therein and entered into a contract affecting its personal liability without being licensed so to do, and the contract and the note are wholly void and of no effect. If, however, the sale of stock was not completed until accepted by the plaintiff in Minneap-

olis, it was then an interstate transaction, completed not within but without the state, and was in all respects, including the note, a valid transaction. The court below found that the transaction was not completed in Wisconsin and was in fact completed by acceptance of plaintiff's counter offer in the state of Minnesota. There is ample evidence to support the conclusions of the trial court.

The defendant contends, with apparent earnestness, that this appeal is ruled by *Southwestern Slate Co. v. Stephens,* *supra,* because the facts herein are in all respects similar to the facts in the *Southwestern Slate Company Case.* We think, however, that the facts involved in that case are so different as to distinguish it clearly from the case at bar. In that case the plaintiff was a licensed foreign corporation with its principal office in Chicago. A resolution was passed by its directors authorizing its secretary to sell $100,000 of its unissued stock at not less than par. Arrangements were made to sell said stock pursuant to such resolution. The stock was offered for sale in the state of Wisconsin and was fully subscribed therein upon condition that one High was to be employed as manager of the company when the stock was sold. The president, secretary, and the stock-broker who conducted the sale of the stock were all residents of Madison. When the stock subscription paper was complete it was taken by the broker to the president, who approved the subscriptions, and the sale of the stock was fully completed within this state. It is very apparent that the facts in that case are quite different from the facts in this. · The subscription herein contained the following specific language: "As soon as this subscription is accepted by the company, a certificate for said stock shall be issued to me by the company showing that the same is full paid and non-assessable." It also contained this language: "No conditions or agreements, other than those printed herein, shall be binding on the com-

pany." The receipt contained the following provision: "In case the stock is not issued, the consideration received by the company will be refunded," and also the following specific provision: "This receipt will not be valid or binding on the company if any conditions are added to those printed on the face hereof or on the face of the subscription." In direct contravention of the terms of the printed receipt there was added thereto in writing the following: "This subscription is taken and accepted upon condition that fifty shares at par of common stock be delivered." Starnes's authority was limited to the sale of preferred stock, and he had no authority to sell the common stock of the plaintiff.

As we view the evidence, it permits of no reasonable inference other than that found by the trial court, that the contract was not completed until the defendant's counter offer was accepted by the plaintiff in the state of Minnesota. Under the plain language of the documents involved in this case it seems clear to us that had the plaintiff company, upon receipt of defendant's subscription note and counter offer, rejected it and returned defendant's note to him, the defendant could not have compelled the plaintiff to accept the subscription and deliver the stock. Had the defendant unconditionally subscribed for the preferred stock which Starnes was authorized to sell, and paid cash therefor, we think a wholly different question would arise even though the subscription contained language indicating that it was to be accepted by the company. 4 Fletcher, Cyclopedia of Corporations (Permanent edition), p. 66, sec. 1405; *Guaranty Mortgage Co. v. Wilcox,* 62 Utah, 184, 218 Pac. 133; *Kennebec Housing Co. v. Barton,* 123 Me. 293, 122 Atl. 852; *Hughes Mfg. & L. Co. v. Wilcox,* 13 Cal. App. 22, 108 Pac. 871; *St. Paul, S. & T. F. R. Co. v. Robbins,* 23 Minn. 439.

However, the facts in this case do not warrant the application of the law of the cases just cited. The cases cited

involved offers to sell stock by various corporations and unconditional acceptances thereof which clearly constituted completed contracts.

The defendant further contends that in any event he is not bound because his conditional subscription, amounting to a counter offer, was never accepted. While the common stock was never delivered, he never asked for its delivery or offered to pay for it or ever mentioned it in any of his letters to the plaintiff during all of the time following the subscription and up to the time that this action was commenced. No reference was ever made to it by either of the parties. In this situation the trial court held that, in the light of the evidence and the conduct of the parties, especially defendant's several renewals of his note, defendant abandoned and waived the delivery of the common stock as a condition of his subscription for the preferred stock. Under the facts and circumstances as shown by the undisputed evidence we do not see how the trial court could have come to any other conclusion.

This court having concluded that the preferred stock was not sold in Wisconsin, and that the contract relating thereto was not completed in Wisconsin, it follows that the transaction was not within the provisions of sec. 1770$b$ of the Statutes then in force. This conclusion being in all respects in harmony with that of the trial court, we must affirm the judgment.

*By the Court.*—Judgment affirmed.