ROY E. HAYS, Executive Secretary, Wisconsin Real EstateExamining Board
You have requested my opinion on four questions concerning powers of the Real Estate Examining Board with regard to requirements of licensing as a real estate broker and deposits to be made in a licensed broker's trust account.
Your first question is whether private mortgage bankers or private mortgage brokers licensed as real estate brokers under ch. 452, Stats., must deposit all moneys collected in the solicitation and servicing of mortgage loans in the Wisconsin broker's authorized real estate trust account in a bank located in and authorized to do business in Wisconsin.
Such companies, which do not qualify for exemption under sec. 452.01 (6), Stats., are required to be licensed because they fall within the definition of real estate broker set forth in sec. 452.01 (2) (a) and (c), Stats., which provide:
"(2) `Real estate broker' means any person not excluded by sub. (6), who:
"(a) For another, and for commission, money or other thing of value, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of an interest or estate in real estate;
"* * *
"(c) Negotiates or offers or attempts to negotiate a loan, secured or to be secured by mortgage or other transfer of or encumbrance on real estate."
See 29 OAG 105 (1940) and Livingston v. Linker Realty Co. (1930), 202 Wis. 232, 231 N.W. 626. *Page 516 
It is noted that mortgage bankers may not be banks. See sec. 221.49, Stats.
Section 452.09, Stats., provides:
"Trust accounts. All down payments, earnest money deposits or other trust funds received by a broker or salesman on behalf of his principal or any other person, shall be deposited in a common trust account, maintained by said broker for such purpose in a bank designated by the broker, pending the consummation or termination of the transaction, except as such moneys may be paid to one of the parties pursuant to such contract or option. The name of said bank shall at all times be registered with the examining board, along with a letter authorizing the examining board to examine and audit said trust account when said examining board deems it necessary."
REB 6.01, Wisconsin Administrative Code, is concerned with trust accounts and in material part provides:
"(1) Each broker shall maintain a common trust account in a bank for the deposit of all down payments, earnest money deposits or other trust funds received by the broker or his salesman on behalf of his principal or any other person pursuant to section 136.01 [452.01], Wis. Stats.
"(2) Each broker shall notify the board of the name of the bank or banks in which said trust account is maintained and also the name of the account on forms provided therefor.
"(3) Each broker shall authorize the board to examine said trust account and shall obtain the certification of the bank attesting to said trust account and consenting to the examination and audit of said account by a duly authorized representative of the board. Said certification and consent shall be furnished on forms prescribed by the board.
"(4) Each broker shall only deposit trust funds received on real estate or business opportunity transactions as defined in section 136.01 [452.01], Wis. Stats., in said common trust account and shall not commingle his personal funds or other funds in said trust account with the exception that a broker may deposit and keep a sum not to exceed $100.00 in said *Page 517 
account from his personal funds which sum shall be specifically identified and deposited to cover bank service charges relating to said trust account.
"(5) A broker may maintain more than one trust account provided the board is advised of said account as specified in section REB 6.01 (2) and (3) above.
"(6) Each broker shall maintain a single entry bookkeeping system in his office, listing the following information on all trust account deposits:
"* * *
"(d) Rent contracts, dates, names of parties, amount of rent installments.
"(e) Mortgages, dates, names of parties, amount of payments of principal and interest.
"* * *
"(h) Earnest money receipts, dates, names of parties, amount of down payment.
"(i) Any other receipts pertaining to the sale, exchange, purchase, rental of real estate or business opportunities, dates, names of parties, amount of payment.
"* * *
"(9) Commissions or fees earned by the broker out of moneys deposited in said trust account shall be withdrawn from said trust account within 24 hours after the transaction is consummated, terminated or after the commission or fees are earned in accordance with the contract involved.
"* * *"
In 51 OAG 94 (1962) it was stated that, by reason of the statute and rule above referred to, a mortgage broker licensed as a real estate broker must deposit payments made to the broker by a mortgagee in a real estate trust account subject to audit by the board.
The answer to your first question is in the affirmative. Section 452.09, Stats., provides that the common trust *Page 518 
account shall be "in a bank designated by the broker." However, it is my opinion that the legislative intent of strict supervision, examination and audit of licensed real estate brokers' trust accounts requires the use of a bank located in Wisconsin. It is recommended that the board amend its rule to that effect to remove any doubt.
Your second question is whether such trust funds must be maintained by the broker in an authorized trust account.
The material portion of sec. 452.09, Stats., requires trust funds to be deposited in a common trust account:
"* * * pending the consummation or termination of the transaction, except as such moneys may be paid to one of the parties pursuant to such contract or option. * * *"
It is my opinion that any trust funds must be maintained in an authorized trust account until the transaction is consummated or terminated unless the agreement between the mortgagor and mortgagee provides that such moneys may be paid out to one of the parties.
In 51 OAG 94, 99 (1962), it was stated:
"Where the loan has been negotiated by the mortgage broker, and is closed by delivery of mortgage and note, and commission has been paid, and where the mortgage broker and mortgagee enter into an agreement whereby the broker is to collect the mortgage payments, the transaction may be considered pending and continuing within the terms of sec. 136.075 [now 452.09].
"The time, manner and amount of the payments to be made by the broker to the mortgagee, or to be directly applied by the broker to payment of insurance premiums or taxes, are matters which are controlled by the agreement for servicing between the broker and mortgagee."
As noted in the second paragraph next above, however, the agreement between the mortgagor and the mortgagee is the primary document to be considered as to whether trust moneys can be paid out to one of the parties. In some situations the mortgagor and mortgagee and mortgage broker may all be parties to the servicing agreement. *Page 519 
The funds involved consist of payments by mortgagors and include payments for taxes and insurance. Where only mortgagor and mortgagee are involved, the payments made for taxes and insurance are in the nature of special deposits. As such, in the absence of special statute or agreement, they sometimes are treated as creating a debtor-creditor relationship. However, the standard form promulgated by the Federal Housing Administration for insurable mortgages in Wisconsin provides that monthly payments to mortgagors are to include payments for taxes and insurance, among other purposes, and requires such sums to be held by the mortgagee in trust to pay said ground rents, premiums, taxes and special assessments. This is required by FHA's regulations and thus is a part of the contract of insurance with that agency.24 CFR 203.23. A parallel obligation is imposed upon the Federal National Mortgage Association, as well as others, with respect to mortgages guaranteed by the Veterans Administration.
Where such funds are held by a third-party mortgage broker for servicing purposes, it would appear without question that a trust relationship is involved.
Your questions have been prompted by objections to the Examining Board's policies made by counsel for the Federal National Mortgage Association on behalf of independent mortgage servicers and mortgage brokers licensed as real estate brokers and doing business in Wisconsin. Counsel for FNMA states:
"Finally, we challenge the application of the Board's policy on FNMA's mortgage servicers because of the nature of FNMA as a federally chartered and regulated institution, specific statutory language in its charter, and the national character of its operations as intended by the U.S. Congress, all serving to pre-empt states from imposing regulatory sanction upon it.
"The Federal National Mortgage Association is a national secondary market facility for residential mortgages, charted by the United States Congress but owned by private shareholders. (12 U.S.C. § 1716 et seq.) It is subject to the general *Page 520 
regulatory power of the Secretary of Housing and Urban Development. (12 U.S.C. § 1723a) The corporation has a sizeable portfolio of residential mortgages which are purchased on a national basis. Nearly all funds invested by FNMA in Wisconsin are originated in the national capital markets of the United States without regard to regional or state boundaries. Likewise, escrow funds held by FNMA through its Custodial Accounts are not segregated and held on a state basis. Notwithstanding its federal charter and national character, Congress foresaw that some action by local jurisdictions might impede the corporation's function as a truly national secondary mortgage market and for that reason provided in our Charter that FNMA have power
"`to conduct its business without regard to any qualification or similar statute in any State of the United States, including the District of Columbia, the Commonwealth of Puerto Rico, and the Territories and possessions of the United States.' (12 U.S.C. § 1723a)
"This forcefully underscores the intent of Congress that FNMA be free of state regulation. Consistent with this, FNMA is exempt from all taxes imposed by any state, territory, possession, Commonwealth, or U.S. dependency or by any state, municipality, or local taxing authority. (12 U.S.C. § 1723a) The only exception to the exemption is with respect to real property owned by FNMA."
Your third question is whether FNMA itself is exempt from the provisions of ch. 452, Stats.
I am of the opinion that it is a "land mortgage or farm loan association" organized under the laws of the United States and when engaged in the transaction of business authorized by law is exempt from the provisions of ch. 452, Stats., by reason of sec. 452.01 (6), Stats., and 12 U.S.C.A. 1723a.
Also see 16 OAG 274 (1927) and 29 OAG 105 (1940).
Your fourth question is whether private mortgage servicers or mortgage bankers which service mortgages for FNMA on a contract basis are exempt from the provisions of ch. 452 and sec. 452.09, Stats., in particular. *Page 521 
I am of the opinion that they are not.
The exemption portion of sec. 452.01, Stats., is to be construed strictly and the board cannot allow exemptions where the statute does not so permit.
State ex rel. Green v. Clark (1940), 235 Wis. 628,294 N.W. 25.
State ex rel. Real Est. Exam. Bd. v. Gerhardt (1968),39 Wis.2d 701, 159 N.W.2d 622.
I find nothing in 12 U.S.C.A. 1723a which is indicative of a congressional intent to extend the exemptions granted FNMA to independent private individuals or corporations it may contract with in the various states, nor is there indicated congressional intent to preempt regulation of the secondary mortgage market.
Counsel for FNMA states that the policy of the Examining Board with respect to trust accounts required of mortgage servicers can result in interference with FNMA's duty to require custodial accounts for the reason that there may be a proliferation of custodial accounts which would increase the expense and ease of audit by FNMA.
Counsel for FNMA states:
"This policy of the Wisconsin Real Estate Examining Board indicates its concern that mortgagor payments to a lender for the purpose of paying real estate taxes and hazard insurance premiums be safeguarded and thus available for disbursement for the purposes for which they were collected. FNMA is similarly concerned, and, as a part of the contractual arrangement with its mortgage servicers, requires that funds representing mortgagor payments for tax and insurance escrows be maintained in an FNMA Custodial Account. Such arrangement includes the following requirement:
"`Each custodial account shall be established in a bank, (or savings and loan association, if the association itself is the Servicer) the deposits of which are insured by the Federal Deposit Insurance Corporation (FDIC), or the Federal Savings and Loan Insurance Corporation (FSLIC), as appropriate. *Page 522 
The establishment of each custodial account is subject to approval by FNMA.'
"* * *
"`All collections shall be deposited in the Custodial Account not later than the first business day following receipt.' (Section 204, FNMA Servicers Guide)"
It would appear to me that the trust account requirements of the Examining Board, sec. 452.09, Stats., and REB 6.01, Wis. Adm. Code, and the Custodial Account policies of FNMA are consistent in purpose and can be administered so that there is no substantial conflict.
RWW:RJV