Smith v. Burns Boiler & Mfg. Co. 132 Wis. 177.

SMITH, Appellant, vs. BURNS BOILER & MANUFACTURING
COMPANY and another, Respondents.

*May 4—May 21, 1907.*

*Corporations: Change in purpose: Waiver of objections: Withdrawal
of subscriptions: When subscribers become stockholders.*

1. Plaintiff had subscribed and had been active in obtaining sub-
   scriptions for stock in a corporation to be formed for a specific
   purpose. A committee, which had been authorized by the sub-
   scribers "to sign application for a charter," executed and duly
   recorded articles of incorporation which went substantially
   beyond the purposes specified in the subscription agreement.
   Two of the incorporators thereafter gave notice of "a meeting
   of the subscribers of stock in the" corporation "for the purpose
   of organization and election of directors." Most of the original
   subscribers had no knowledge that a corporation had actually
   been formed or of the difference between its purposes and the
   purpose mentioned in their agreement. Plaintiff attended
   the meeting, which was called to order by one of the incorpo-
   rators who had also been chairman of the subscribers' organiza-
   tion. Another chairman was elected, who stated that only
   those of the subscribers who had paid twenty-five per cent.
   of their subscriptions would be allowed to vote. Plaintiff acted
   on a committee to ascertain who were so qualified. A motion
   was then made to adopt the articles of incorporation. Plaint-
   iff attempted to speak in opposition to this, but was declared
   out of order. He did not vote upon the motion, but imme-
   diately after its adoption announced to the secretary of the
   meeting, who also had the custody of the moneys paid in, that
   he withdrew his subscription, and then, with others, left the
   meeting. Afterwards he demanded the return of the amount
   paid on his subscription, which was refused. *Held* that, even if
   plaintiff knew of the execution and recording of the articles of
   incorporation, he did not, by his attendance or participation in
   said meeting, waive objection to the changed purposes of the
   corporation as in fact organized or become bound as a sub-
   scriber to its stock; and that he might recover the amount paid
   on his subscription.
2. The name of the corporation, used in the notice of said meeting,
   "Burns Boiler & Manufacturing Company," did not present such

a departure from the plan, which had been called by the sub-scribers the "Burns Boiler Works," as to suggest that those at-tending the meeting would thereby become bound as stock-holders in a corporation organized with purposes different from those contemplated.

3. One who has been accepted as a subscriber for stock in a cor-poration is completely a stockholder and entitled to vote as such, whether he has paid his subscription or not.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Reversed.*

Some time in December, 1902, a proposal was made by Mr. Burns and his two sons, engaged in building boilers at Green Bay, to transfer their business to De Pere if about $49,000 of stock were subscribed in De Pere, the Burnses agreeing to take care of the rest of $100,000. The proposal was con-sidered by the Business Men's Association, and a committee, of which the plaintiff was one, appointed to make some in-vestigation. A generally favorable report was made, where-upon a committee was appointed, with plaintiff as a member, to solicit. Subscriptions were obtained from different persons to an amount satisfactory to the Burnses, though less than originally proposed, the subscription being in the following words:

"It is proposed by the Burns Boiler Company of Green Bay, Wis., to establish a factory at De Pere for the manu-facture of their boilers. Capital stock $100,000, of which amount Messrs. Burns agree to take care of $51,000; the balance, $49,000, to be raised by subscription, part of which it is proposed to raise in De Pere. For this purpose, we, the undersigned, agree to subscribe for the number of shares set opposite our respective names, at the par value of $100 each, with the understanding that the proposition, upon fuller in-vestigation, shall be deemed a satisfactory investment by the committee in charge."

Several more or less formal meetings of subscribers to stock were held and reports made, at one of which, held No-vember 1st, after the required amount of subscriptions had

been obtained, the committee declared their unwillingness to take the responsibility of reporting that the investment would be satisfactory and asked to be relieved from any recommendation on that subject, as to which no action seems to have been taken. At the same meeting the subscribers organized themselves, with a chairman and secretary, and chose the defendant *W. M. Workman* treasurer to collect the subscriptions, and he was directed to collect twenty-five per cent. of the subscriptions by November 5th. This he did from time to time, and collected from the plaintiff twenty-five per cent. of his $1,000 subscription, or $250. On November 5th, at a meeting of the subscribers, the chairman, one Risdon, and the treasurer, *Workman,* were, on motion, authorized "to sign application for charter," which the trial court finds meant to "duly execute, file, and record articles of association . . . as set forth in said subscription list." Between that date and November 13th, A. B. Burns, together with his attorney, caused to be gathered together at the office of one Dr. Gregory, the chairman of the subscription committee, several members of that committee and some others of the subscribers, at which were discussed, in an informal manner, articles of incorporation, of which notations were made by the attorney, and drafts of parts of said articles were considered; but none of the parties present, as the court finds, understood that the meeting was clothed with final power of taking authoritative action relative to the exact wording of the articles. Following this, articles of incorporation were drawn up, were executed by A. B. Burns, Risdon, and *Workman* on November 13th, and were subsequently recorded with the register of deeds and filed with the secretary of state. These articles the court finds went substantially beyond the purposes of the corporation as authorized by the subscription agreement in that they permitted general merchandising and general manufacturing other than that incidental to making and disposing of boilers.

Thereafter a notice was given to subscribers in the following words:

"Take notice that there will be a meeting of the subscribers of stock in the *Burns Boiler & Manufacturing Company* on the 11th day of December, 1902, at 8:00 p. m. at the Business Men's rooms in the city of De Pere for the purposes of organization and election of directors.

"W. M. WORKMAN.<br>"A. B. BURNS."

On the afternoon of December 11th another informal gathering of perhaps a dozen of the subscribers, including Mr. Burns and some of those who had joined him in subscribing for that part of the stock, and including plaintiff, took place at the office of the Business Men's Association, at which time the articles of association were read over to them and also certain proposed by-laws. It does not appear that the plaintiff knew that these articles had been so filed as to constitute a corporation, but the obvious mental attitude of those present was that they were open for discussion and objection. Plaintiff made some objections thereto, the substance of which is not very clearly disclosed, except that, among other things, he desired to make some provision restrictive of the use of the money to be contributed by the De Pere stockholders and restrictive of the powers to borrow money. His views were apparently disapproved generally by those present. After that meeting, and before the evening meeting on the same day which had been noticed, he discussed with some of the subscribers his objections to the scope of this corporation, the change of name, etc., and with certain other subscribers attended that meeting with the intent and purpose of presenting thereto views with reference to the provisions of the articles to guard the interests of the subscribers, and with the purpose of having such proposals and suggestions adopted by said meeting. That meeting was called to order by Mr. Risdon, one of the incorporators and also the chairman of the last meeting of subscribers, who invited the meeting to choose

a chairman, whereupon one Larson was chosen, and the defendant *Workman* was chosen secretary of the meeting. It was announced by the chairman that only those of the subscribers who had paid twenty-five per cent. of their subscriptions would be allowed to vote at the meeting, whereupon a committee was appointed to ascertain who were in that category, of which committee plaintiff was one. That committee ascertained from *Mr. Workman* what sums had been paid to him, accepted his statement and the evidence of his bankbook, and reported a list accordingly, of which list about ninety were present at this meeting. Thereupon it was declared that the next business was to consider the adoption of the articles of association, which were then read and a motion made to adopt them. The court finds that immediately after said motion was made the plaintiff undertook to address the chair and meeting for the purpose of urging his plan for a trustee and calling attention to the scope of the articles, but was not allowed to proceed, the chair ruling that he was out of order. The vote to adopt the articles was put and carried *viva voce,* plaintiff not voting, and a motion was then made to proceed to the election of directors singly by ballot. Ballots were tendered to plaintiff, but refused, and while they were being distributed plaintiff went to *Mr. Workman,* who was the custodian of his money and also the secretary of the meeting, and announced to him that he withdrew his subscription, and he and the plaintiffs in the two cases decided herewith, Mr. Wilcox and Mr. Wells, then withdrew from the meeting, which, however, proceeded to the election of a board of directors, who, immediately upon its adjournment, elected officers in accordance with the articles of association, and shortly thereafter the defendant *Workman* paid over all the twenty-five per cent. subscriptions in his hands to the treasurer of the corporation. Plaintiff demanded both of the defendant *Workman* and of the corporation treasurer return of his $250, which demand was refused.

The trial court held that, while the corporation as organ-

ized was so different from that described in the subscription paper that plaintiff had never subscribed to stock therein, he had waived the variance by attending the meeting of December 11th and had thereby become a stockholder; the court deeming the sending of the notice of that meeting by two of the incorporators as tantamount to an acceptance of plaintiff's subscription to stock in the corporation which they had formed. Accordingly, judgment was entered dismissing the complaint, from which the plaintiff appeals.

For the appellant there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.* They argued, among other things, that the radical departure from the business contemplated released the subscribers. *Worcester Med. Inst. v. Bigelow,* 6 Gray, 498; *Carter v. Carter,* 14 Pick. 424; 2 Cook, Corp. (5th ed.) §§ 500–502; 1 id. § 62; note to *Wood v. Seattle,* 52 L. R. A. 386; *Burrows v. Smith,* 10 N. Y. 550; *Norwich L. Mfg. Co. v. Hockaday,* 89 Va. 557; *Greenbrier Ind. Expo. v. Rodes,* 37 W. Va. 738; *Marietta & C. R. Co. v. Elliott,* 10 Ohio St. 57. Plaintiff never assented to the enlarged powers and purposes of the corporation, and never elected to become a stockholder thereof. Until the subscription paper has been presented to the corporation and assented to by it the signers are not stockholders. *Badger P. Co. v. Rose,* 95 Wis. 145. The act of acceptance must be of an unequivocal character. *Starrett v. Rockland F. & M. Ins. Co.* 65 Me. 374. The subscription is a mere proposal, and until accepted by a duly authorized body may be revoked or withdrawn for or without reason. *M. E. Church v. Sherman,* 36 Wis. 404; *Leonard v. Lent,* 43 Wis. 83; *Badger P. Co. v. Rose,* 95 Wis. 145; *Gilman v. Gross,* 97 Wis. 224; *Franey v. Warner,* 96 Wis. 222; *Rehbein v. Rahr,* 109 Wis. 136, 147; *La Fayette Co. M. Corp. v. Magoon,* 73 Wis. 627; *Superior C. L. Co. v. Bickford,* 93 Wis. 220; *Hodges v. O'Brien,* 113 Wis. 97; *Athol M. H. Co. v. Carey,* 116 Mass. 471; *Williams v. Rogan,* 59 Tex. 438; *Pratt v. Trustees,* 93 Ill. 475, 34 Am.

Rep. 187; *Beach v. First M. E. Church,* 96 Ill. 177; *Twenty-third St. B. Church v. Cornell,* 117 N. Y. 601, 23 N. E. 177, 6 L. R. A. 807; *Phipps v. Jones,* 20 Pa. St. 260, 59 Am. Dec. 708; *Bryant's Pond S. M. Co. v. Felt,* 87 Me. 234, 47 Am. St. Rep. 323; *Muncy T. E. Co. v. Green,* 143 Pa. St. 269, 21 Am. & Eng. Corp. Cas. 328; *Auburn B. & N. Works v. Shultz,* 143 Pa. St. 256; 26 Am. & Eng. Ency. of Law (2d ed.) 908, and cases cited; *McCabe v. O'Connor,* 69 Iowa, 134, 28 N. W. 573; *Providence A. Co. v. Kent & S. Co.* 19 R. I. 561, 35 Atl. 152; *Hudson R. E. Co. v. Tower,* 161 Mass. 10, 42 Am. St. Rep. 379; *Kidwelly C. Co. v. Raby,* 2 Price, 93; *Davis v. Bronson,* 2 N. Dak. 300, 16 L. R. A. 655. The mere existence of the corporation at the time of the subscription, or its being subsequently created, does not constitute an acceptance. Something more must be done—there must be an acceptance in fact, either by express and formal act for that purpose, or by some act, unequivocal in its character, manifesting an intent to accept, so that there may be mutuality of obligation. *Plank's T. Co. v. Burkhard,* 87 Mich. 182, 49 N. W. 562; *Curry H. Co. v. Mullins,* 93 Mich. 318, 53 N. W. 360. The intent was that each subscription should be several and independent of all and every other. *Gibbons v. Grinsel,* 79 Wis. 365, 370; *Conn. & P. R. Co. v. Bailey,* 24 Vt. 465, 58 Am. Dec. 181; *Richelieu H. Co. v. International M. E. Co.* 140 Ill. 248, 33 Am. St. Rep. 240; *Cross v. Pinckneyville M. Co.* 17 Ill. 54; *Tonica & P. R. Co. v. McNeely,* 21 Ill. 71; 2 Beach, Corp. § 512 and notes; *Galt's Ex'r v. Swain,* 9 Grat. 633, 60 Am. Dec. 311; *Grand Lodge v. Farnham,* 70 Cal. 158, 11 Pac. 598. A subscription is not binding unless the promisee has incurred liability in reliance thereon, even though others are led to subscribe on the faith of the subscription sought to be enforced. *Cottage St. M. E. Church v. Kendall,* 121 Mass. 528, 23 Am. St. Rep. 286; *Presbyterian Church v. Cooper,* 112 N. Y. 517, 20 N. E. 352, 8 Am. St. Rep. 767, 3 L. R. A. 468; *Method-*

*ist O. H. Asso. v. Sharp's Ex'r,* 6 Mo. App. 150; *Foxcraft Academy v. Favor,* 4 Me. 382; *Farmington Academy v. Allen,* 14 Mass. 172, 7 Am. Dec. 201; *University of Des Moines v. Livingston,* 57 Iowa, 307, 10 N. W. 738, 42 Am. Rep. 42.

For the respondents there was a brief by *Greene, Fairchild, North & Parker,* attorneys, and *H. O. Fairchild,* of counsel, and oral argument by *H. O. Fairchild.* They contended, *inter alia,* that the subscription paper was a contract between all the subscribers to form among themselves such a corporation as is mentioned in the subscription paper. *Minneapolis T. Co. v. Davis,* 40 Minn. 110 (approved in *Badger P. Co. v. Rose,* 95 Wis. 145, 151); 1 Thomp. Corp. § 1205; 2 id. § 1313; *Baird v. Ross,* 2 Macq. 61; *Gibbons v. Grinsel,* 79 Wis. 365, 371. The plaintiff waived his right to object to the changed name, if there were any such, or the enlarged purposes of the corporation as set forth in the articles, and accepted the corporation as organized as in satisfactory compliance with the requirements of the subscription contract. *Pabst B. Co. v. Milwaukee,* 126 Wis. 110, 115–117; *Smeesters v. Schroeder,* 123 Wis. 116; 29 Am. & Eng. Ency. of Law (2d ed.) 1095. The incorporators, with the knowledge and consent of plaintiff, accepted his subscription. Acceptance of a stock subscription by the corporation, so as to make a binding contract between the corporation and subscriber, may, before the election of directors, be evidenced by any act on the part of the signers of the articles which clearly indicates their intent to accept the proposal or treat the subscriber as a stockholder. No particular formality is required. A mere meeting of minds on the subject, indicating that the proposal contained in the subscription is agreeable to the signers of the articles and is accepted by them, whether it be a writing or some other act, recognizes the relation and establishes it in fact. *Wheeler v. Wheeler,* 90 N. Y. 353; *Bell's Appeal,* 115 Pa. St. 88, 8 Atl. 177; *Chaffin v. Cummings,* 37 Me. 76,

83; *Penobscot R. Co. v. Dummer,* 40 Me. 172, 173, 174; *Starrett v. Rockland F. & M. Ins. Co.* 65 Me. 374, 379, 380; *International F. & E. Asso. v. Walker,* 83 Mich. 386, 393; *Portland & F. R. Co. v. Spillman,* 23 Oreg. 588, 32 Pac. 688; *Richmondville U. Sem. v. McDonald,* 34 N. Y. 379; *Jacksonville, M., P. R. & N. Co. v. Hooper,* 160 U. S. 514, 522. Plaintiff in the afternoon and evening of December 11th acquiesced in these articles after they had been executed, filed, and recorded. *International F. & E. Asso. v. Walker,* 83 Mich. 386, 393. When the plaintiff was served with the notice signed by the incorporators calling him into the meeting "of the subscribers of stock in the *Burns Boiler & Manufacturing Company*" "for the purpose of organization and election of directors," he knew his subscription proposal had been presented to the *Burns Boiler & Manufacturing Company* and that the incorporators, acting for the corporation under sec. 1773, Stats. (1898), believed his subscription was at that time an open, continuing offer to take ten shares of its stock, and for that reason it had a right to accept the offer. It was his duty to repudiate this assumption at once if incorrect or thereafter be bound by it.

Dodge, J. The decision of the trial court that plaintiff did not, by signing the written subscription, tender himself as a subscriber to the capital stock of the defendant corporation as finally organized is not assailed and is, therefore, the starting point, back of which it is not necessary to go, except so far as previous transactions color events subsequent to about November 13th, when the corporate articles were signed. The question, of course, then arises: By what act of his did the plaintiff become a member of such corporation or become estopped to deny his membership therein or to recall the money which he had paid into *Workman's* hands for another purpose, and to refuse to complete payment for ten shares? Confessedly, he never, by express words, declared his willingness

to become a member of such corporation, nor does the court find that there ever was any express contract on his part so to do. The argument is that, by attending the meeting of December 11th, he effectively waived, as the court says, any objection to the alleged purposes of the corporation in fact organized, and thus is bound as effectively as if he had in express words subscribed for ten shares of its stock.

The doctrine of waiver has been the subject of much looseness of expression. When considered as a means of imposing upon one a contract obligation, it is, however, subject to all the general principles which control the making of contracts. A true contract can arise only by the actual meeting of minds, and no true contract arises from the act of one apparently assenting to terms to which he has not in words agreed, unless a court can with certainty draw the conclusion from such act that his mental attitude was in fact that of assent and concurrence. 1 Page, Cont. § 50. But the term "waiver" is also applied to deprive one of a right or immunity when, having a right to assume either of two inconsistent positions, his acts unambiguously indicate an intention to adopt and avail himself of one. In such case the law holds him to have effectively waived his right to claim the other, whether or not he consciously intended such waiver. *Rasmusen v. N. Y. L. Ins. Co.* 91 Wis. 81, 88, 64 N. W. 301; *Monroe W. W. Co. v. Monroe,* 110 Wis. 11, 85 N. W. 685; *Smeesters v. Schroeder,* 123 Wis. 116, 101 N. W. 363; *Pabst B. Co. v. Milwaukee,* 126 Wis. 110, 105 N. W. 563; *West v. Platt,* 127 Mass. 367, 372.

It has not been found by the court, and is not seriously contended by the respondents, that the plaintiff ever consciously assented to become a member of this corporation, to which, from the first moment of authentic information as to its scope and purposes, he raised objection; but it is contended, and was concluded by the trial court, that he did knowingly and intentionally so avail himself of rights and

privileges which only a member or stockholder could have that a repudiation of membership would be inconsistent, and therefore not permissible, even though neither of the defendants can claim to have changed position in reliance on plaintiff's acts so as to arouse estoppel against him in their favor. A search of the record and of the findings convinces us that there is no such act on his part worthy of discussion except the act of attending the meeting of December 11th. It is contended by the respondents that plaintiff was fully informed and understood that this was a meeting of the corporation; that by the sending out of the notices therefor each subscriber to the formerly contemplated corporation had been notified that he had been accepted into this different one; and that no one could have supposed he had any right to attend this meeting, at least with any purpose of participating therein, unless he assented to such alleged acceptance of him as a member by the two incorporators. We are not disposed to question the logic of the proposition that one who is notified that he, as an accepted member of a corporation, is invited to attend one of its meetings, and who in response does attend and participate, may thereby waive at least some objections which theretofore he might have raised to a contention that he was such member; but we are persuaded that the conceded facts, and those substantially undisputed, although some of them may be shrouded by some confusion of testimony, negative that situation. It must be remembered that here were more than 100 business men who, from combined motives of hope of a profitable investment and also of promotion of the prosperity of their city, had undertaken to supply capital for a certain purpose. *Mr. Smith* had been one of the active solicitors and had been one of the committee upon whose judgment as to the safety of the enterprise subscriptions had been made. A considerable number had joined upon the faith of his explanation of the scope of the enterprise and the methods by which the interests of the sub-

scribers could be safeguarded. Since these men had put
their names to a writing binding them as they doubtless felt
morally, if not legally, to each other to contribute the amount
subscribed to such an enterprise, there had been no general in-
formation as to the course of events. Three of their number
had, under quite ambiguous instructions, undertaken not
alone to "sign application for a charter," as they had been
authorized, but to actually organize a corporation, of which,
of course, the signers of the articles were at first the only
members. Indeed, this fact itself was, so far as the evidence
goes, known to but a few of the subscribers. In organizing
that corporation they had departed radically from the pur-
poses of the subscription, and, according to the testimony
of substantially all those who speak upon it, they had done so
with the idea that their act was tentative merely, and was not
conclusive upon those with whom they were associated, but
subject to their consideration and approval or rejection. In-
deed, it is hardly probable that most of the lay members,
either of the committee or of the subscribers, had any mental
conception of that very metaphysical entity, the corporation,
which results from filing articles before any stockholders
exist. It is common experience that a party of business men,
meeting to organize a corporation, and being confronted with
a set of articles already recorded, would assume that they
were but a proposition which might be wholly discarded and
another basis of association adopted. In this situation two
men, one the treasurer of the temporary association of sub-
scribers, gave a notice that "the subscribers" would meet on
a certain date for organization and election of directors.

Great weight is placed by respondents upon the fact that
the same two men were signers of the articles of association.
But it must be borne in mind that, while the fact that they
were both subscribers and one an officer of the subscribers'
organization was known to substantially every subscriber, the
fact that they had signed these articles of association, or that

they had placed them on record, was unknown to the great majority of those to whom the notice was sent. Now, even conceding that the plaintiff knew that these two men had signed the articles and that they had been recorded, he also knew that the great majority of his fellow subscribers had no such information, and he was entitled to construe and understand this notice as one sent to men in ignorance of those facts. We cannot think that business men of good standing in the community, and with honest purpose, could have supposed for a moment that, by sending out this notice to the great majority of their fellow subscribers, they were placing the latter in a position where, if they did not act with diligence and if they responded to the notice in question, they would become bound to a situation which had never been submitted to them and to which they never had assented. That would be, in effect, laying a trap for their fellow townsmen, which is not a purpose to be ascribed to men of the character which these evince. For these reasons we do not at all agree with the counsel for the respondents as to the effect of this notice as informing its recipients that none were expected at that meeting save in the capacity of already accepted members of an existing corporation. This body of subscribers, already organized with their chairman and secretary, were entitled, and had a right, to expect from the very men who signed this notice that they would be given an opportunity as such subscribers to consider and determine upon the propriety of any departure from the terms of their subscription; and we think it clear, not only that the recipient of such a notice would naturally so construe it, but that no other meaning existed in the minds of those who sent it, and that the construction now urged is an afterthought. It called for a meeting of the subscribers to something; it was sent to those who were subscribers to a general plan for a corporation, the details of which had not yet been determined upon, and those to whom it was sent were none of them subscribers to stock in this

corporation which had been formed; besides, at least nine tenths of them had no knowledge that it had been formed or of its characteristics. Clearly, it called for a meeting of the subscribers to that to which the persons notified had in fact subscribed. It could not honestly mean anything else. The name used in the notice, *Burns Boiler & Manufacturing Company,* much dwelt on by respondents' counsel, presented no such necessary departure from the plan which had been called by the subscribers the Burns Boiler Works, as to suggest to the subscribers that they were being entrapped into an admission that they entered into a new enterprise by responding to such a notice. None of them had the subscription paper in possession nor probably its exact words in memory. As ordinarily prudent men they owed no duty of suspicion or scrutiny to guard against being placed under new liabilities by such a device, at the hands of honorable members of their own business community. The information conveyed by the notice that directors should be chosen at that meeting evinced no more than that, if the subscribers adopted the details of a corporation, then they should proceed to act under it, and there would be no necessity for a further notice and meeting at a subsequent date for such purpose.

Taking the view which we do of the natural construction and significance of the notice, the conclusion obviously results that the action of one in attending that meeting by no means unequivocally disclosed a purpose to surrender his attitude as a subscriber under the original writing and his right to protest against a change in the purpose of the corporation, and to refuse, himself, to join the new and different organization in case his associates decided so to do. If plaintiff believed, as we think he well might, that this was primarily a meeting of the subscribers to listen to and consider something which was novel to the great majority of them, although not to him, then he, as a subscriber, intending to abide by and carry out his original subscription, not only had the right, but, by reason of his prominence in the movement, al-

most owed the duty, to attend that meeting and explain to those less well informed the reasons why he saw peril in changes from the original plan. It would hardly have been the part of fairness to those whom he had invited into the enterprise to stay away and allow them to be drawn, in the hurry of such a meeting, into assent to the changes which he disapproved.

If he might have properly believed that he was invited to attend a meeting of those who had subscribed to the plan defined by the subscription paper, his act in attending and participating, at least so far as the actions and deliberations were within the proper field for consideration by such subscribers, did not necessarily evince a purpose to join the corporation organized by the articles. Did he proceed beyond that point? First, it being announced that none but those who had paid twenty-five per cent. of their subscriptions should have a vote at the meeting, he acted on a committee to ascertain who they were. This was by no means inconsistent with the supposition that the subscribers to the original project were still in conference; certainly no more inconsistent than with the idea that those who had been already accepted as stockholders in the new corporation were meeting as such. It can hardly be questioned that subscribers under a paper such as this, when gathered together, may lay down such rules as they please regulating voting privileges at their meetings—this for the very good reason that no one is concluded by any vote taken to which he does not personally assent. But a meeting of the accepted stockholders of a corporation has no right to place any such restriction upon the franchise. A subscriber for stock who has been so accepted is completely a stockholder, whether he has paid his subscription or not. Helliwell, Stock & Stockh. § 41; *Franey v. Warner,* 96 Wis. 222, 231, 71 N. W. 81; *Rehbein v. Rahr,* 109 Wis. 136, 147, 85 N. W. 315. And our statutes prescribe that in the meeting of stockholders each shall be entitled to vote according to the stock held by him. Sec. 1760, Stats. (1898). Hence we can ascribe no

conclusive effect to the plaintiff's remaining participant in
the proceedings to the extent of ascertaining those who com-
plied with the qualifications for suffrage which the chairman
had imposed upon the meeting.   There was nothing therein
to clearly inform him that he was in a meeting of the stock-
holders of any other corporation and not a mere meeting of
the subscribers to the original project.   The next step in
which he participated was a motion to adopt the articles of in-
corporation which had just been read to those present.   This
proposition was obviously one which had no place in a stock-
holders' meeting.   If these men were already members of
that corporation, they could accomplish nothing by a vote to
adopt or not to adopt its articles.   They were already adopted
for that corporation, subject, of course, to the ultimate right
of amendment in the manner prescribed by statute.   If, on
the other hand, this was a meeting of the subscribers it was
entirely within the function of such a gathering to decide
whether this plan, now for the first time in specific form pre-
sented to them for their consideration, was such as they were
willing to assent to, or whether it was such a departure from
that to which they had agreed that they were unwilling to
adopt it.   We think it clear that this motion not only was not
calculated to inform the plaintiff that he was exercising
rights other than as a mere subscriber to the original project,
but such as to well-nigh assure him that he was not.   The
vote to adopt these articles was the last action of that meeting
in which it can be said, in any view, that the plaintiff partici-
pated.   Immediately after the making of the motion, as the
trial court finds, came a vigorous attempt by plaintiff and
some of those concurring with his views to urge upon the
meeting reasons why the motion should not prevail and why
they should not surrender their money into the custody of
such a corporation as would result from the articles which had
just been read.   Here he was stopped by rulings of the chair-
man, we need not inquire whether properly or improperly.
Certainly his effort in that respect was not evincive of a pur-

pose to waive his objections. Immediately after the vote for adoption, and apparently as promptly as was physically consistent with the confusion of this crowded and disorderly room, he conferred with certain others of similar views, and proceeded to the custodian of his money and the secretary of the meeting and notified him formally of the withdrawal of his subscription, if to be construed as a subscription to the corporation whose articles the meeting had just decided to adopt. We can discover no significance in the fact that while the plaintiff and others were making their progress to the table at which defendant *Workman* was seated, or striving to gain recognition from the chair for the purpose of urging their protests, the distribution of ballots for election of directors proceeded, although such election, doubtless, must be considered as marking the meeting with a corporate character thenceforward. That was beyond their power to prevent or escape. It had been made obvious that plaintiff objected to being drawn into this corporation and did not assent thereto, even though he had not been allowed to develop in words his objection, and it was not necessary that he should terminate his physical presence in the room momentarily. He did so apparently with all due celerity consistent with notification to the custodian of his money that he declined to be considered a subscriber to this corporation. He did not participate in choosing directors, which, we are convinced, was the first act not fairly consistent with a deliberative gathering of original subscribers.

Our conclusion is that no act of the plaintiff is shown so unequivocally evincing an intention to accept membership as a stockholder in the defendant corporation, or inconsistent with his right to insist that the money deposited with defendant *Workman* should be applied only to purposes within the limits defined by the original subscription paper, that he is, or at the time of his demand was, precluded from insisting on return of that money either from *Workman* or from the corporation which had received it with full knowledge of all

the facts; hence that his right to recover it in this action is perfect.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with the prayer of the complaint.