SOMERS, Respondent, vs. GERMANIA NATIONAL BANK OF
MILWAUKEE, Appellant.

*October 31, 1912—February 18, 1913.*

*Banks and banking: Certificates of deposit: Payment to third person
without indorsement: Principal and agent: Proof of agency:
Declarations: Testimony of agent: Husband and wife: Es-
toppel: Waiver of rights: Loss by silence and delay: Burden
of proving prejudice: Presumptions: Constructive intent to
waive.*

1. If a person have a certificate of deposit in a bank, payable to
   his order, and it be paid to another without indorsement
   thereon, proof thereof, unexplained, establishes, *prima facie*, a
   case in favor of such person to recover of such bank.
2. Neither agency nor agency authority can properly be estab-
   lished by proof of declarations of the pretended agent.
3. The foregoing does not affect competency of a person claimed
   to be the agent of another to testify in respect thereto.
4. "The authority of an agent, when not in writing or required to
   be, may be proved by the agent himself," and that obtains
   "where the wife acts as agent of the husband, or the husband
   as agent of the wife."
5. In case one would naturally be expected to make a claim of a
   pecuniary nature, if it existed, against another and enforce-
   ment thereof would give rise to a claim over against a third
   person, and that one knows, or has reasonable ground to know,
   that such other has acted inconsistent with the existence of
   such claim, relying upon supposed authority of such person,
   and delay in making the facts known to such other might prob-
   ably work to his prejudice, unreasonable delay, in that regard,
   raises a rebuttable presumption of prejudice.
6. In the circumstances stated the burden of proof is on the one
   who keeps silent, to show that his conduct was not prejudicial
   to the person against whom the claim is alleged to exist.
7. A right may be lost by delay without any element of actual dam-
   age to him against whom it existed.
8. An existing right, known, or which ought to be known, by the
   possessor, may be lost by waiver as well as by estoppel.
9. A change of position by one relying upon the conduct of an-
   other—the relations between the two being such as to raise a
   duty of the latter to make known to the former the facts—so
   that a reversal of such conduct would work prejudice to such
   person, is essential to estoppel *in pais.*

10. The voluntary abandonment of a known, or presumably known right, constitutes a waiver thereof which cannot be displaced by a change of mind, regardless of any element of estoppel.

11. A right cannot be lost by abandonment without intention to waive; but the intent may appear, conclusively, as a legal result of conduct, regardless of existence of any actual or express intent, or even in case of an actual but undisclosed intention not to waive.

12. There cannot be a waiver without intent to waive, based on knowledge of the facts; but, the intent and such knowledge may be constructive as well as actual, and be conclusive where, in contemplation of law, knowledge does or ought to exist.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

Action to recover $3,500 principal and accrued interest claimed to be due on certificates of deposit. The plaintiff's claim was this: The certificates were duly issued by defendant to plaintiff in 1906, payable to her order. She never transferred them nor authorized transfer thereof. They were taken without her authority and presented to defendant for payment, with a forged indorsement of her name thereon, and were paid to the wrongdoer. As soon as she learned thereof she called on defendant and notified it of the true state of the case.

Defendant answered to this effect: Plaintiff's husband, as her duly authorized agent, transacted all the business respecting the certificates up to the time they were paid. He deposited the money September 23, 1905. Prior to January 15th the money was drawn on part of the certificates by Mr. Somers and placed in his account by plaintiff's permission; she indorsing the certificates. On that date one of the remaining certificates, and February 15th thereafter, the other, was presented for payment by *Mrs. Somers's* duly authorized agent, and paid. Though she knew of the transactions she made no complaint until March 10, 1909, during which time plaintiff's position had materially changed.

There was evidence establishing these facts: Plaintiff and Paul J. Somers intermarried in 1904. They lived together thereafter as man and wife until some time in the early part of 1909 when they separated. During 1905 and 1906, Somers was a practicing lawyer in Milwaukee. *Mrs. Somers* trusted him to do all her business. He conducted all her financial transactions with defendant. In 1905, as her agent, he deposited with defendant the $5,850, taking four $500, one $1,000, and one $2,000 certificates of deposit, and credit in open account for $500 in his name and $350 in *Mrs. Somers's* name. All the certificates were left by *Mrs. Somers* in his care. He deposited them with his papers in a lockbox at the Citizens Trust Company in Milwaukee. He, alone, had access to the box. She knew that. She never had the key to the box except on one occasion for four days. Three of the certificates, aggregating $1,500, were, prior to January, 1905, indorsed by her and used by her husband by her permission to augment his open account. By February 15, 1906, the other certificates were likewise used, he indorsing them in her name and his own.

Plaintiff and Mr. Somers lived together thereafter in quite an extravagant manner, considering their income, particularly his. In October, 1906, upon the occasion of plaintiff wanting $95 for a special purpose, she asked defendant, by telephone, about her interest money, whereupon she was informed she had no interest-bearing fund at the bank. She told her husband of the occurrence and he supplied her with the needed money. She paid no further attention to such occurrence till the expiration of one year and three months. In the meantime, she and Mr. Somers had become somewhat estranged but were still living together as husband and wife.

After the expiration of such period, she became informed of all the facts in respect to the use of the certificates. She requested defendant to produce the papers, which it did. Then, and again a few days thereafter, there was conversa-

tion between the representatives of the bank and plaintiff respecting the certificates. Her claim was that Somers had used them without authority. She gave such representatives the impression that she was much in need of money and purposed realizing on the canceled certificates. She was given to understand that if Somers had really forged her name to the papers, and thus improperly obtained the money, it was a very serious matter for him. She manifested a disposition not to 'press the question so far as to thus involve Somers. She said she would think it over, giving the officers of the bank the impression that she would reflect upon the situation and then conclude whether to hold the bank liable to her on the certificates, or submit to what had been done. She lived with Somers for about a year thereafter, going to Chicago for that purpose. There they parted; she returning to Milwaukee, where after some two months she applied for a divorce and obtained it without contest. Mr. Somers, in the meantime, had gone to reside in a distant state. Some time after the divorce was obtained—about one year and three months after the last occurrence mentioned at the bank, and some two years and six months after payment of the certificates—the claim in suit was made. Between the call at the bank and the later occasion plaintiff did not communicate therewith or make known thereto that she intended to make a claim upon the certificates. In the meantime the matter had been practically forgotten at the bank. It was thought, because of her not returning to make a claim after going away to reflect over the matter, as before stated, that she had dropped it. She explained why she did not follow up the matter when informed over the telephone in 1906, she had no interest-bearing fund at the bank; saying that Somers stated to her, she must have been misunderstood by the bank official when she talked over the telephone; that he would look into it the next day and that he supplied her with the $95, the need of which moved her to make the inquiry. She

made no explanation why she did not later see that Somers obtained an explanation of the communication over the telephone as he promised. She made no explanation of her silence from January, 1908, till about the time the action was commenced in 1909.

There was evidence to the effect that the bank had the customary identification card as to plaintiff's signature, but did not refer to it when the certificates were paid, taking it for granted, on account of the way her business had been done, that Somers had authority to sign her name. There was evidence tending to prove that he had authority, in fact, to do what he did, and, further, direct evidence that she ratified his conduct, such direct evidence, however, being put in issue by her.

Evidence by Mr. Somers was offered to prove that he acted as agent for his wife, fully authorized thereto, but it was rejected upon the theory of incompetence under the rule that the authority of an agent cannot be established by proof of his declarations.

The cause was submitted to the jury for a general verdict, instructions being given with reference to evidence of Mr. Somers, showing that he was authorized to handle the certificates as he did—which was received and then stricken out on motion—that it was condemned by the rule precluding agency, or agency authority, to be established by declarations of the agent, hence the exclusion of it. This was made very emphatic so as to guard, as far as practicable, against plaintiff being prejudiced by the supposed improper evidence having been gotten before the jury. The jury were further instructed to the effect that negligence or delay on plaintiff's part in making her claim against the bank after having full knowledge of the facts, did not constitute a defense in the absence of satisfactory proof that defendant would be actually damaged by the laches, if it were compelled, at the late day, to pay the certificates.

The jury found in plaintiff's favor for the full amount claimed.

For the appellant there were briefs by *Austin, Fehr & Gehrz,* and oral argument by *G. G. Gehrz.*

*Paul D. Durant,* for the respondent.

The following opinion was filed November 19, 1912:

MARSHALL, J.   It must be conceded that proof of appellant having paid the certificates without respondent having indorsed them, unexplained, made a case in her favor.   It may also be conceded that, upon the whole case as sent to the jury, there was reasonable ground for the finding that respondent did not sufficiently hold out her husband as having authority to handle her business, to justify appellant in making the payment.   However, there are many circumstances pointing in appellant's favor on that subject.   The case, in that regard, was so strong that had the evidence of Somers as to authority having been given him, been allowed, pretty certainly, it would, with the jury, have turned the scales in appellant's favor.   Most grievous error was committed in excluding that evidence.   The rule which the trial judge supposed governed the situation,—the one that agency and agency authority cannot be established by proof of the declarations of the agent,—had no application to the case.   It refers to declarations made out of court and offered as evidence by the testimony of the person to whom made,—not of the agent himself, as in this case.   Such is always proper.

That the trial judge went widely and prejudicially astray in ruling out Somers's evidence, is too clear to require more than a mere statement of the matter.   His evidence would probably have proved, or strongly tended to prove, that he either had authority to use the certificates as he did or that his doing so was subsequently consented to by respondent. The error in excluding the evidence was intensified by the court's instructions to the jury.   Remarks in their presence,

misconceiving the scope of the rule excluding proof of declarations of an agent on the subject of his agency, were made as prejudicial as practicable by the supplementary remarks on the subject in the charge.    The judge seems to have thought that such supplementary remarks were necessary to remove any vestige of Somers's evidence as to his agency, which, perchance, had not been stricken out, and all impressions which such supposed erroneous evidence might have made upon the minds of the jury.

According to the idea which governed the trial, an agent is incompetent to testify to his agency or scope of his authority, while the rule the court had in mind, only goes to evidence of persons other than the agent, as to the latter's declarations.    It is not considered necessary to discuss the matter at length and illustrate by authorities.    It is too elementary. While it is often said in the books, the declarations of an agent are, in general, no evidence of the agency, *Davis v. Henderson,* 20 Wis. 520; *McCune v. Badger,* 126 Wis. 186, 191, 105 N. W. 667; speaking always of declarations made to third persons who are called to prove the same, it is quite as often said: "The authority of an agent, when not in writing or required to be, may be proved by the agent himself," and such principle "governs in the proof of all agencies" including "where the wife acts as agent of the husband, or the husband as agent of the wife."    *O'Conner v. Hartford F. Ins. Co.* 31 Wis. 160; *Roberts v. Northwestern Nat. Ins. Co.* 90 Wis. 210, 62 N. W. 1048; *Smith v. State,* 149 Wis. 63, 134 N. W. 1123.

For the manifest prejudicial error committed, as indicated, the judgment must be reversed; but it seems that still more vital error was committed on the trial.    So strong a case of estoppel and waiver was made in appellant's favor, as seems to present an insurmountable obstacle to any other disposition of the appeal than, to not only reverse the judgment; but to remand the cause for dismissal with costs.

According to the undisputed evidence, respondent and her husband, at the time she was first notified of her certificate money having all been drawn, lived so extravagantly that it could not well have failed to suggest to her probability of her money having been used up, if she did not actually know it. The circumstances point that way so forcibly as to be unexplainable on any reasonable hypothesis to the contrary. She was a woman of considerable experience. She had been married before she became the wife of Mr. Somers. She knew how to do business with a bank. She was accustomed to have a check account and to have certificates of deposit. She evidently knew such certificates, and not an open account, commonly drew interest and that it was important to her to draw the accrued interest at regular periods.

A few days after the certificates in question had run a year,—the time requisite, presumably, to entitle her to the highest rate of interest,—she called up the bank by telephone about the matter. The reply indicated that the whole sum of $5,850 she possessed only a little more than a year before and placed in the hands of Somers had been exhausted. She knew that could not possibly be without Mr. Somers having signed her name to the certificates, yet there is nothing to indicate that she was particularly surprised. Though assured from the bank, in the most positive language, that her money was gone, according to her story she was so satisfied with a mere remark by Mr. Somers that the bank official must have misunderstood her and that he would look up the matter the next day, that she never thought of the subject again for over a year,—even so as to inquire of Mr. Somers whether he had done as he promised.

How can the conduct indicated be reconciled with the idea that respondent did not, during the long period, know her money was gone? She must have known of it. The circumstances pointing that way are so strong as to render her claim to the contrary unbelievable. Her conduct, from the first,

in leaving all her business with the bank to be transacted by Somers, gave him such dignity as her agent that, when she was informed he had used up all her money, it was her duty to, at least, make seasonable efforts to acquaint appellant with his want of authority, if such want existed. How can such conduct be reasonably reconciled with the idea that she did not know, or have such reason to know the fact, as to be chargeable with knowledge thereof? The most natural thing for one, in the circumstances she testified to herself, would be to follow up the matter by visiting the bank and make inquiry, or, at least, make inquiry of the husband as to whether he had investigated as she testified he promised to do. Yet, as it seems, she paid no attention to the matter for over a year, and until she had made up her mind to leave Somers. In that, it seems, there is such proof of prior authority, or subsequent acquiescence in the use of her certificates, that the conclusion is irresistible that there was one or the other, and that appellant had a right to rely on the appearance as to what the truth really was.

At this point the instruction to the jury that the delay did not work a waiver or estoppel in the absence of proof of actual damage to appellant by the facts is important. It was not good law and could not have worked otherwise than prejudicially. Such long delay, thus preventing appellant from having the benefit of opportunity to pursue Somers, if he had wrongfully obtained the money from the bank, was presumably prejudicial to it. The burden was not upon appellant, as the court suggested, to affirmatively establish actual damages by the delay. At least, the burden was rather upon respondent to establish the contrary. Moreover, if there was actual acquiescence, as the evidence seems to conclusively circumstantially establish, it was binding on her. Having once acquiesced, she waived her right against the bank, regardless of whether there was any element of estoppel, strictly so called, or not.

A change of position by one, in reliance upon the conduct of another, so that a reversal of such conduct would work prejudice to the former, is essential to estoppel *in pais;* but, not to waiver, and one is just as effective as a defense as the other. She knew her rights, or should have known them. According to her testimony, she was fully informed of the fact that, if her husband had drawn her money without authority, she could insist upon its being paid to her just the same. She did not so insist till more than two years. She did not even raise the question for some fifteen months, and until, as before indicated, serious trouble had occurred between her and Somers.

The doctrine of waiver as applied to the facts in this case, seems to have been entirely overlooked by the trial court in deciding the motion made in appellant's behalf for a directed verdict. All the essentials of waiver were present without reasonable controversy. There was knowledge, actual and constructive, of the facts. Either was sufficient. The underlying facts, upon which to predicate a waiver, as in this case, and the waiver, itself, may be implied from circumstances as well as be established otherwise. Where implied, necessarily, from the circumstances, the mere claim of absence of intent to waive does not overcome such situation. This court has spoken on the subject, repeatedly. *Pabst B. Co. v. Milwaukee,* 126 Wis. 110, 105 N. W. 563; *Smith v. Burns B. & Mfg. Co.* 132 Wis. 177, 111 N. W. 1123; *Voss v. Northwestern Nat. L. Ins. Co.* 137 Wis. 492, 118 N. W. 212; *Castello v. Citizens State Bank,* 140 Wis. 275, 280, 122 N. W. 769. In *Pabst B. Co. v. Milwaukee, supra,* the principle of waiver was stated thus:

"The intent to waive may appear as a legal result of conduct. The actuating motive, or the intention to abandon a right, is generally a matter of inference to be deduced with more or less certainty from the external and visible acts of the party, and all the accompanying circumstances of the

transaction, regardless of whether there was an actual or expressed intent to waive, or even if there was an actual but undisclosed intention to the contrary."

"It is suggested that there can be no waiver without intent to waive based on knowledge of the facts. True, but one is presumed to know that which in contemplation of law he ought to know, and one is presumed to waive that which is necessarily implied from his conduct. Constructive as well as actual knowledge of the facts, and implied as well as express intent, satisfies the prime essential of a conclusive waiver."

As indicated in the cases cited, there is much tendency to confuse the doctrine of estoppel with that of waiver which does not require any element of estoppel at all,—only a voluntary choice to insist or not to insist upon a right, known, or conclusively presumed to be known. Unreasonable delay raises a conclusive presumption of acquiescence or choice. Speaking on the same subject in *Smith v. Burns B. & Mfg. Co.* 132 Wis. 177, 111 N. W. 1123, the court said:

"Waiver is also applied to deprive one of a right or immunity when, having a right to assume either of two inconsistent positions, his acts unambiguously indicate an intention to adopt and avail himself of one. In such case the law holds him to have effectually waived his right to claim the other, whether or not he consciously intended such waiver."

In the light of the foregoing we cannot escape the conclusion from the circumstances which are substantially without dispute, that respondent waited so long after being chargeable with knowledge of the misuse of her money, if there were such misuse, before asserting any right against appellant, that, as matter of law, she waived such right. She voluntarily chose to abandon all claim for her money or to seek redress against her husband. Having once so acquiesced, either actually or constructively, the surrendered right was beyond her power to resume; and that whether there were, technically, the essentials of estoppel *in pais* or not.

If there were any doubt as to the correctness of the foregoing, looking only to the conduct of respondent from the time she was informed by appellant in October, 1906, that her money had been withdrawn from the bank till she made inquiry fifteen months later, that doubt sinks out of sight in face of her conduct at the later date and from the time she made the claim over a year later. She was still living with Somers when she was definitely informed by him, in the early part of 1908, that he had withdrawn her money, followed by her two interviews with appellant's officers in respect to the matter. When called to face the situation where she had to choose whether to insist upon the bank paying the certificates a second time, leaving Somers liable to an action for forgery, she informed appellant that she would reflect over the matter before taking the final step. In such circumstances she was bound to use some reasonable diligence in respect thereto. Certainly, the bank had a right to know from her, pretty soon, what conclusion she had arrived at. In case of her failure, for a period beyond a reasonable time, to speak the final word, the bank had a right to conclusively presume that she had chosen to acquiesce in Somers's conduct and waive her right against it. Certainly the long delay of over a year and till she had left Somers for good and resolved upon obtaining a divorce from him, indicated to the bank, as a matter of law, what conclusion she had reached.

The fact that during this second long period of silence respondent lived with Somers, shows, too, conclusively, that she had elected to abide by the situation he had created, to leave her any standing to then claim she intended, all the time, to hold appellant liable to her. The inference that she had abandoned such intent, if she had it up to the time of her visit to the bank, as before stated, seems to appear most unambiguously, and also that the final separation from Somers and consciousness that their marital relations were practically ended, moved her to change her mind. That she

could not efficiently do. The trial court seems to have thought she could, unless there was an element of estoppel involving actual damage to the bank by her delay, which is all wrong. The unambiguous purpose to waive her right against the bank, if she had any, as suggested by the authorities, ended the matter so far as appellant was concerned. The case in its favor seems, on the law and the facts, to be too clear to warrant pursuing the matter further or making any other disposition than to reverse the judgment appealed from, and remand the cause with directions to dismiss with costs.

*By the Court.*—So ordered.

SIEBECKER, J., dissents.

A motion for a rehearing was denied, with $25 costs, on February 18, 1913.

The following opinion was filed February 18, 1913:

KERWIN, J. (*dissenting*). A motion for rehearing, or that the mandate be modified so as to grant a new trial, was made in this case. I have carefully re-examined the record and am fully convinced that a new trial should be granted, and the mandate so modified. I am therefore forced to dissent from the order denying a rehearing or modification of the mandate. *Jacobs v. Queen Ins. Co.* 123 Wis. 608, 101 N. W. 1090.

SIEBECKER, J. I concur in the foregoing dissent of Mr. Justice KERWIN.