A. B. Schuetz v. International Harvester Company of America, Appellant.

**Bankruptcy:** preference: waiver. An agreement among the creditors of an insolvent debtor, after knowledge of his insolvency, to apportion his insurance money among them for the purpose of avoiding bankruptcy proceedings, is a waiver on the part of one of such creditors of any right to the fund by virtue of an order on the in-

surance company given him prior to the agreement and to his knowledge of the insolvency; and the order is no defense to an action by the trustee in bankruptcy to recover the amount of the insurance money received by such creditor.

**Same:** ESTOPPEL. The acceptance of the insurance money was also a
2   waiver of any right under notes and a mortgage, on that portion of the stock of the debtor destroyed by fire, given the creditors four months prior to the fire; and since the creditor had no right to the insurance money, except through the bankruptcy proceeding, to permit him to accept his share of the fund under the creditor's agreement and also insist on his notes and mortgage would be prejudicial to the other creditors and the trustee, and he was therefore estopped from relying thereon.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

TUESDAY, DECEMBER 15, 1914.

ACTION by a trustee in bankruptcy to recover money distributed to a creditor within four months prior to filing of the petition therein resulted in judgment as prayed. The defendant appeals.—*Affirmed.*

*George Wambach, Miller & Wallingford,* and *C. F. Maxwell,* for appellant.

*Clifford V. Cox* and *R. B. Alberson,* for appellee.

LADD, C. J.—The issues in this case are the same as those raised in *Shuetz, Trustee, v. Moline Plow Co.,* 166 Iowa, 523, except that two additional defenses were interposed, and these only are argued on the present appeal. In October, 1910, Alvin Ogburn was indebted to the Interstate Harvester Company on open account, $2,718.35. Thereafter it sold him a traction engine, husker, and shredder for $1,525, taking one note of $525 and two notes of $500 each. All these notes were secured by a chattel mortgage on the outfit, and the last two

were signed by William Ogburn as surety. He also became indebted to the company $27, the price of items purchased. Ogburn was engaged in the implement and harness business at East Peru, and a large part of his stock in trade was destroyed by fire October 30 or 31, 1910. It was insured in several companies, and, on January 26th following, defendant's agent Sproul procured of Ogburn an order in words following:

E. Peru, Ia., 1—26—11.

Anchor Fire Insurance Co.
Standard Fire Insurance Co.
Farmers' Insurance Co.

Gentlemen: Please pay to the International H. Co. of A. $2,718.35 and charge to me on insurance to be pd. on my loss, and this will be your receipt for same.

Yours resply,     Alvin Ogburn.

This was deposited with the adjusting agent of the several insurance companies. At that time Sproul claimed not to have been aware of Ogburn's insolvency, but admitted having learned thereof shortly thereafter. By his consent and that of Ogburn, this order was turned over to J. D. Wallingford, who accepted $5,000 from the insurance companies in payment of the loss, and March 3, 1911, thereafter, a meeting of part of the mercantile creditors was had at Wallingford's office, at which it was arranged to distribute the above amount to such creditors, paying pro rata on their respective claims. This was done; defendant receiving $2,793.01 on the total indebtedness of Ogburn to it of $4,270.35. The payments made in pursuance of that arrangement to two of these creditors were held in the case cited to constitute voidable performances, and it is not questioned but that decision should be followed, were it not for the above order and the chattel mortgage securing the notes. The theory of the defendant is that, though it agreed to reduce its claim on open account and notes in the division of the fund in the hands of Wallingford, it did not release the security afforded by the order and chattel mortgage, and, as these were given more than four months

prior to the filing of the petition in bankruptcy, section 60 of the Bankruptcy Act of Congress, approved July 1, 1898, as amended (U. S. Comp. St. 1913, section 9644), does not apply.

This conclusion may be conceded if it shall be found that the order and mortgage continued in force. The contention of plaintiff is that these were waived, and that defendant is now estopped from asserting such securities. Prior to the negotiations leading up to and at the meeting of March 3d, the defendant was fully aware of the insolvency of Ogburn, and that bankruptcy proceedings would be instituted, unless the assets of his estate could be distributed in pursuance of an amicable arrangement among his creditors. Were Ogburn adjudged a bankrupt, the order and mortgage likely would be set aside as constituting illegal preferences, and this accounts for the activity of its agent Sproul in bringing about that meeting. The object, by the arrangement then made, was to avoid the expense and litigation incident to bankruptcy proceedings which was recognized by all as the alternative. Undoubtedly the defendant was inclined to let go of as little as possible, and, in consenting to the delivery of the order to Wallingford, insisted on him holding it to protect any interest his company may have had therein, and Wallingford kept it, as he testified, "awaiting subsequent developments and to see what the interests of the parties were and whether or not a settlement could be made." Later on he testified that, had there been no settlement, he would have turned the money over to a trustee in bankruptcy, as it was the understanding at the meeting of March 3d that in such event bankruptcy proceedings would follow. This was confirmed by Sproul, who related that the order was not mentioned at the meeting of the creditors; that he merely proposed to scale his claims down so as to share the fund pro rata with other mercantile creditors, but did not release the security afforded by the order, and proposed to discharge the surety from the two notes, but retained the chattel security. If this were true, Wallingford certainly knew nothing of it, for in his letter of March 16, 1911, the

proposition to the creditors was whether "you will accept 65 per cent. net to you in full face of your claim which is listed with us." Nor did Ogburn so understand it, for he testified that the understanding at the meeting was that the pro rata share of the insurance money was to be received "in payment in full," and it was to that he consented and on no other condition. His brother, who was present, denied that Sproul mentioned keeping out the chattel security or referred to any other security, and this was confirmed by Allen, who recalled that Sproul, when he made the proposition at that meeting, said, among other things, that the mercantile creditors proposed to take the insurance money pro rata on their respective debts and receipt in full to Ogburn, and other creditors would take the property at and near East Peru and satisfy their claims.

This evidence fully warranted the trial court in concluding that no reservations were made by the defendant, and that, in the face of bankruptcy proceedings, it was ready to waive all claim to any security it had and share the spoils with other creditors. Of course, in doing so, the defendant reduced its claim as every other creditor did, but this was done without any reference to the order or mortgage. There was no hint that it was claiming the amount received under or by virtue of either, and there was no better ground for so claiming, save receiving it, than for asserting a like claim to other of the insurance money paid to other creditors. Such a claim is an afterthought suggested by the exigencies of the present case. That Sproul was proceeding on the theory that the order and mortgage could not be enforced clearly appears from the testimony of Wallingford:

Q. The situation was just this, was it not, that you wanted to get the insurance money to distribute among all the mercantile creditors, and Sproul wanted to get the full amount of the order Exhibit 13 and still retain certain securities for the indebtedness on open account? A. I think that was a correct statement of the situation until a certain time when Mr. Sproul

received further light.  Q. Then you said to Mr. Sproul, 'If you do not recede from that position, we will put Alvin Ogburn into bankruptcy, and you will get a pro rata share under the trustee.'  A. I do not think I put it that broadly. Q. Well you handed it to him with gloves on in the same way?  A. I think he saw that as quickly as I did, and we worked together mostly.  I cannot recall the date or words, but I think we mentioned that situation which he recognized as soon as it was discussed, and said he had no desire to insist on that proposition, but was willing to discount his claim down so that everybody would be equal.

The money was turned over to Wallingford, with the assent of Sproul and Ogburn, with the view of distributing to the mercantile creditors, and, as this was accomplished, it is not important what Wallingford's duty with reference to the order would have been had the scheme of settlement failed.  It is enough

1. BANKRUPTCY: preference: waiver.

that there was an agreement to distribute, independent of the order, in pursance of which, and not of the order, the several dividends were remitted to the creditors, and were to be in full satisfaction of their respective claims.  Now a waiver is an intentional relinquishment of a known right.  *Currie v. Casualty Co.*, 147 Iowa, 281.  A consideration is not essential thereto.  *Mahaska County v. Crist*, 87 Iowa, 415.  Nor is the element of prejudice as in estoppel necessarily involved.  *Somers v. Germania National Bank*, 152 Wis. 210 (138 N. W. 713), where it was said:

A change of position by one, in reliance upon the conduct of another, so that a reversal of such conduct would work prejudice to the former, is essential to estoppel in pais, but not to waiver, and one is just as effectual as a defense as the other.

Of course the choice of one of two inconsistent positions is a waiver of the other.  *Smith v. Burns, etc., Co.*, 132 Wis. 177 (111 N. W. 1123).  But the intent may be shown in some other way, as by conduct or oral or written expressions.

The actuating motive or intention to abandon a right is generally a matter of inference to be deduced with more or less certainty from the external and visible acts of the party and all the accompanying circumstances of the transaction, regardless of whether there was an actual or expressed intent to waive, or even if there was an actual but undisclosed intent to the contrary. (*Pabst Brew. Co. v. Milwaukee,* 126 Wis. 110, 105 N. W. 563.)

A waiver takes place where a man dispenses with the performance of something which he had a right to exact. A man may do that not only by saying he dispenses with it (that he excuses the performance), or he may do it as effectually by conduct which naturally and justly leads the other party to believe that he dispenses with it. (2 Herm. on Estoppel, section 825.)

In *Thompson v. Gorner,* 4 Cal. Unrep. 606 (36 Pac. 434), where interest on a note was payable monthly in advance, and, if not paid when due, the principal was to bear a higher rate, acceptance of interest computed at the former rate from time to time during two years was held to waive the latter rate of interest. Here the defendant had the right to assert its claim under the order, and, having .full knowledge thereof and of the infirmities of such claim, it chose to enter into the arrangement with other mercantile creditors and accept the dividend paid thereunder, and in so doing, without reservation, it waived all right, if any it had, under and by virtue of the order. Having so waived performance of the order, it is not in a position now to demand that it be given effect. As laid down in the work from which we have quoted:

No one who waives or dispenses with the performance of a contract can rely upon the failure to perform it, either as a defense or cause of action, for no one can complain of a default which he had caused or sanctioned. (2 Herm. on Estop. section 1020.)

We are of opinion that the court rightly held that the order was entirely waived, as to the portion of the insurance

money paid to defendant, as well as that remitted to other creditors.

The case as to the notes and mortgage is even clearer. The agreement contemplated, as we have found, that the dividend of $.6364 on the dollar should be in full payment of the claims. This was paid on defendant's notes of $1,525, and, as receiving payment under such an arrangement was utterly inconsistent with the continuing force of the unpaid portion of the notes and the lien of the mortgage, these were necessarily waived.

2. SAME: estoppel.

Moreover, the defendant is estopped from claiming under the chattel mortgage. But for the arrangement of March 3d, defendant could have asserted no claim to the insurance money, save as a creditor of Ogburn in bankruptcy proceedings, which otherwise would have been instituted. By entering into that arrangement, it procured the payment therefrom of nearly 64 per cent. of its indebtedness secured by the mortgage. Having obtained this advantage through the adjustment of that date, it may not retain it and at the same time insist upon the enforcement of the mortgage lien. To permit it so to do would prejudice the creditors or the trustee representing them to the extent of the value of the property covered thereby, which, but for such adjustment, must have been distributed among the creditors through the bankruptcy court. This being so, the defendant is estopped from setting up any claim under its mortgage. Notwithstanding this, the company thereafter foreclosed the mortgage and appropriated the property covered thereby to its own use, contrary to the understanding that creditors, other than mercantile, were to have all property, other than the insurance money, out of which to satisfy their claims. But its right to seize this property is not now in issue. The payment of the dividend amounted to a preference such as adjudged in the decision previously rendered.—*Affirmed.*

.... DEEMER, GAYNOR, and WITHROW, JJ., concur.